# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2019AP1996-CR

†Petition for Review filed

Complete Title of Case:

**STATE OF WISCONSIN,**

**PLAINTIFF-RESPONDENT,**

**V.**

**ALIJOUWON T. WATKINS,**

**DEFENDANT-APPELLANT.†**

| | |
|---|---|
| Opinion Filed: | May 27, 2021 |
| Submitted on Briefs: | December 10, 2020 |

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Kloppenburg, and Nashold, JJ. |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Thomas B. Aquino,* assistant state public defender of Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sara Lynn Shaeffer,* assistant attorney general, and *Joshua L. Kaul,* attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

May 27, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1996-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CF1270

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

ALIJOUWON T. WATKINS,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Dane County: JOSANN M. REYNOLDS, Judge. *Affirmed.*

Before Fitzpatrick, P.J., Kloppenburg, and Nashold, JJ.

¶1 KLOPPENBURG, J. Alijouwon T. Watkins was convicted of multiple charges, referred to in this opinion as the "assault-related crimes," that arose from a domestic violence incident in 2015 between Watkins and his girlfriend

and from Watkins's ensuing altercation with two police officers who responded to the domestic violence call. Watkins was also convicted of three additional charges, referred to in this opinion as the "conspiracy-related crimes," that arose from events occurring in 2016 in which Watkins, while incarcerated in the Dane County Jail, solicited false testimony regarding the assault-related crimes and conspired to kill one of the police officers who responded to that incident so that she could not testify as to those crimes.

¶2     On appeal, Watkins argues that he is entitled to a new trial on both the assault-related crimes and the conspiracy-related crimes because the circuit court improperly joined the two sets of crimes for trial. In the alternative, Watkins argues that, based on new information relating to Damian James, who testified at trial as a "key witness" for the State regarding the conspiracy-related crimes, he is entitled to a new trial on the conspiracy-related crimes based on newly-discovered evidence. Specifically, Watkins cites as newly-discovered evidence James's post-trial arrests and convictions for impersonating a police officer.[1]

¶3     We conclude that Watkins's joinder argument fails because the assault-related crimes and the conspiracy-related crimes are "connected together" in that the conspiracy-related crimes were arguably committed to avoid conviction on the assault-related crimes. *See* WIS. STAT. § 971.12(1) (2019-20)[2] ("Two or more crimes may be charged in the same complaint … if the crimes charged … are based on the same act or transaction or on 2 or more acts or transactions connected together …."); ***State v. Salinas***, 2016 WI 44, ¶38, 369 Wis. 2d 9, 879 N.W.2d 609

---

[1] For ease of reading, we will refer to James's post-trial arrests and convictions as his "post-trial arrests."

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

(separate crimes are "connected together" for purposes of joinder when the defendant "arguably engaged in one crime to prevent disclosure and punishment for another"). We also conclude that Watkins's newly-discovered evidence argument fails because evidence of James's post-trial arrests does not satisfy the requirements for newly-discovered evidence in that the facts of James's post-trial arrests did not exist at the time of Watkins's trial. Therefore, evidence of those facts could not possibly have been heard by the jury at trial so as to have created reasonable doubt as to Watkins's guilt. *See State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (to succeed on a motion for a new trial based on newly-discovered evidence, a reasonable probability must exist that "had the jury heard the newly-discovered evidence, it would have had a reasonable doubt as to the defendant's guilt."); WIS. STAT. § 805.15(3) (describing requirements for new trial based on newly-discovered evidence). Accordingly, we affirm.

## BACKGROUND

¶4 The following facts are undisputed for purposes of this appeal. In June 2015, police responded to a domestic violence incident involving Watkins and his girlfriend. Officer E.M.,[3] responding to the incident with another officer, attempted to arrest Watkins and met with Watkins's resistance. E.M. sustained a concussion in the course of her attempt to arrest Watkins before he escaped. Watkins was subsequently arrested, brought to the Dane County Jail, and charged with eight counts related to the June 2015 events referenced above: misdemeanor battery, disorderly conduct, criminal damage to property, felony intimidation of a

---

[3] We, like the parties, refer to Officer E.M. by her initials as a victim of some of the crimes at issue, pursuant to WIS. STAT. RULE 809.86(4).

victim, felony intimidation of a witness, attempted battery of a peace officer, resisting an officer causing substantial bodily harm to the officer, and escape.

¶5     Watkins was subsequently charged with three additional counts related to his communications while in the Dane County Jail in 2016:  conspiracy to commit first-degree homicide, felony intimidation of a witness, and solicitation of perjury.  Before Watkins's scheduled trial date on the assault-related crimes, the State moved to join the two sets of crimes for trial.  The circuit court granted the motion over Watkins's objection.  The trial on all crimes took place in May 2017.

¶6     Damian James testified at trial regarding the conspiracy-related crimes.  We relate James's testimony at trial in some detail, as follows.

¶7     In May 2016, James was twice arrested and placed in the same cell pod with Watkins.  While in jail, James told "stories" that he "was associated with Italian organized crime" and James believed that Watkins believed James to be "associated with organized crime."

¶8     On May 27, 2016, James found a note under his cell door.  The unsigned note reads:

> DJ
>
> Bro, I heard that you may know people who will do my friend a favor.  He will pay whatever to have two pigs in Madison slaughtered and the bitch who called them on him.  They say he battered two pigs and his ex.  He will work for you until his debt is pay [sic] off.  He already tried someone else, but they was all talk.  Let me know if you can help.  This is no joke.  This is real.
>
> Please flush this.
>
> P.S. If you can't help, can you point me in the direction of who can?  Someone say they will do it, but we want to be sure it is done for real.

With all respect.

¶9    James did not know at the time who wrote the note and responded by writing his own note requesting that the writer of the original note "come and talk." James placed his note on the television stand in the common area of the cell pod. James did not see who took the note he wrote, but he received another note the next day (May 28), which reads: "Bro, he just scared to approach you so he asked me to. This is not a setup. I swear on my life."

¶10    James came to believe that Watkins was the author of the notes because of a previous conversation between James and Watkins. That conversation arose when Officer E.M. appeared on television and Watkins, appearing agitated, said, "That's the bitch right there. That's the bitch that arrested me. I want that bitch dead. That's the bitch that arrested me."

¶11    James met with law enforcement on May 28, 2016, gave them the two notes, and told them where he "thought that [the notes] came from." James told law enforcement that he would be "willing to cooperate" in further investigation of the notes. From that time through June 6, 2018, James wore an "electronic listening device," also referred to as a "recording device" or "wire," to record conversations with Watkins and provided information to law enforcement about his communications with Watkins. During that period, James and Watkins exchanged notes by flinging them into one another's cells. James, on his own initiative and "without instruction" by law enforcement, wrote a note to Watkins that reads:

> Bro, we need to know what you want done about this cop. We can throw money at her, but it can backfire. She can turn it in and get you another case or we can just deal with this bitch directly. This way we will both have dirt on each other so we would never have to worry about the two of us turning on each other. Plus, if she is gone, so is her testimony. It's up to you, little bro. Let me know, though, because I have to talk to my uncle.

5

Watkins replied, writing, "I need her gone." James then wrote to Watkins, "I need her name, age, full description, shift, hours and area that she works in. You need to understand that if I do this, there is no going back. We are in this for life," and Watkins replied with a note detailing the areas in which Officer E.M. usually patrolled and her name, height, date of birth, and physical description.

¶12    Watkins subsequently asked James if he "knew of anybody who would come and say that they witnessed this arrest," referring to the attempted arrest of Watkins by Officer E.M. and another officer in June 2015. The two men formed a plan that James's "significant other's sister" would "come and testify and say that she witnessed the arrest and that there was no resisting going on and that [the officers] lied, stuff like that." Watkins then wrote to James a note detailing how James's significant other's sister should testify:

> I was leaving Leopold Park on [T]raceway when I seen 2 police officers approach a black male he place his hands behind his back that's when the taller female grab the young man hair and tried to force him to the ground he then stood up and was walking to the two females. 3 secs later he was taze by both female officers one in the back and one in the chest the black male stood in place that's when the taller female with blonde hair began to throw kicks and punches at the male the smaller officer still has his right arm pinned down they push him to a mailbox that's when the male was able to run.

¶13    Law enforcement asked James to wear a "wire" and discuss with Watkins payment for the "hit," referring to the killing of Officer E.M. to prevent her from testifying at Watkins's trial regarding the assault-related crimes. At law enforcement's instruction, James wrote Watkins a note providing a phone number that was ostensibly for a "hitter" who would carry out the killing of Officer E.M., and instructing Watkins to "just tell him that this is about the work you need done

on your car." In fact, James knew that the phone number would reach an undercover officer who had established "car parts" as the code for a "hit."

¶14 While in the Dane County Jail in 2016, James fabricated stories about his connections with organized crime and his military background. James also lied to law enforcement about being a Marine and suffering from post-traumatic stress syndrome (PTSD) from his military service. James stated during his testimony that he had seven prior convictions.

¶15 In response to James's testimony, Watkins presented testimony from multiple inmates regarding James's fabrications while in the Dane County Jail in May and June 2016. The inmates testified that: James was "sneaky" and "untruthful"; nothing James said, and nothing James said under oath, could be believed; James was "dishonest" and "conniving"; James was "not trustworthy" and fabricated stories about his membership in the Army, the Marines, the Vice Lords criminal gang, and the Italian mob. Watkins also presented testimony from law enforcement officers that in May and June 2016 James lied to them about his background.

¶16 The State presented, among other exhibits, a recording of Watkins's phone call to the undercover officer in which he requested help fixing his car and stated that James's wife would provide payment and a form signed by Watkins requesting release of jail funds to James's wife.

¶17 During closing arguments, defense counsel drew the jury's attention to the above-described testimony about James being a "liar." The circuit court gave the jury a limiting instruction regarding James's testimony:

> You have heard testimony from Damian James who stated that he was involved in the crime charged against the

7

defendant. You should consider this testimony with caution and great care, giving it the weight you believe it is entitled to receive. You should not base a verdict of guilty upon it alone, unless after consideration of all the evidence you are satisfied beyond a reasonable doubt that the defendant is guilty.

¶18 On May 5, 2017, the jury found Watkins guilty of three of the eight assault-related crimes and all three of the conspiracy-related crimes.

¶19 Following Watkins's trial, in June 2017 and in July 2018, James was twice arrested and convicted, upon James's guilty pleas, for impersonating a law enforcement officer. Watkins filed a postconviction motion seeking a new trial on the conspiracy-related crimes based on newly-discovered evidence, proffering James's above-described post-trial arrests as the newly-discovered evidence. The circuit court denied Watkins's motion in a written decision and order. This appeal follows.

## DISCUSSION

¶20 Watkins argues that the circuit court erred in (1) joining the assault-related crimes and the conspiracy-related crimes for trial; and (2) denying Watkins's motion for a new trial on the conspiracy-related crimes based on what Watkins argues is newly-discovered evidence of James's post-trial arrests for impersonating a police officer. We conclude that Watkins fails to show either that joinder was unauthorized by the joinder statute or that the circuit court erred in denying Watkins's motion for a new trial based on the purported newly-discovered evidence.

### I. Joinder

¶21 We first summarize the standard of review and general legal principles governing decisions on joinder. We next explain why we conclude that

joinder was proper here. Finally, we address and reject Watkins's arguments to the contrary.

### A. Standard of Review and General Legal Principles

¶22    We review de novo a circuit court's decision on joinder under Wisconsin's joinder statute, WIS. STAT. § 971.12. *Salinas*, 369 Wis. 2d 9, ¶30 ("joinder is a question of law that we review de novo"). That statute provides, in pertinent part:

> (1) Joinder of crimes. Two or more crimes may be charged in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan. When a misdemeanor is joined with a felony, the trial shall be in the court with jurisdiction to try the felony.
>
> ….
>
> (3) Relief from prejudicial joinder. If it appears that a defendant or the state is prejudiced by a joinder of crimes or of defendants in a complaint, information or indictment or by such joinder for trial together, the court may order separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. The district attorney shall advise the court prior to trial if the district attorney intends to use the statement of a codefendant which implicates another defendant in the crime charged. Thereupon, the judge shall grant a severance as to any such defendant.

WIS. STAT. § 971.12(1)-(3).

¶23    We construe WIS. STAT. § 971.12(1) "broadly in favor of the initial joinder." *State v. Locke*, 177 Wis. 2d 590, 596, 502 N.W.2d 891 (Ct. App. 1993). "The purpose of the joinder provisions is to promote economy and efficiency in judicial administration and to avoid a multiplicity of trials …." *State v. Leach*, 124

Wis. 2d 648, 671, 370 N.W.2d 240 (1985) (quoted source and punctuation marks omitted); *Salinas,* 369 Wis. 2d 9, ¶43.

¶24    By its plain language, WIS. STAT. § 971.12(1) permits joinder of charged crimes that are "of the same or similar character" or that are "connected together." For separate crimes to be "of the same or similar character," the crimes must be "the same type of offenses occurring over a relatively short period of time and the evidence as to each must overlap." *State v. Linton*, 2010 WI App 129, ¶14, 329 Wis. 2d 687, 791 N.W.2d 222. To determine whether crimes are "connected together,"

> we look to a variety of factors, including but not limited to: (1) are the charges closely related; (2) are there common factors of substantial importance; (3) did one charge arise out of the investigation of the other; (4) are the crimes close in time or close in location, or do the crimes involve the same victims; (5) are the crimes similar in manner, scheme or plan; (6) was one crime committed to prevent punishment for another; and (7) would joinder serve the goals and purposes of § 971.12.

*Salinas*, 369 Wis. 2d 9, ¶43.

¶25    Pertinent here, our supreme court has repeatedly held that separate crimes are "connected together" when the defendant "arguably engaged in one crime to prevent disclosure [of] and punishment for another." *Id.*, ¶38. In *Peters v. State*, 70 Wis. 2d 22, 233 N.W.2d 420 (1975) (disapproved of on other grounds by *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990)), our supreme court ruled that the crimes of burglary and obstruction of an officer were properly joined where the crime of obstruction was charged based on the defendant's fabricated alibi in relation to the burglary, writing: "The two crimes charged here, 'burglary' and 'obstructing an officer,' are 'connected together' since the charge of obstructing an officer is based upon an alibi defense to the charge of burglarizing the tavern."

10

*Peters*, 70 Wis. 2d at 29. In *State v. Bettinger*, 100 Wis. 2d 691, 303 N.W.2d 585 (1981), the court held that a sexual offense crime and an attempted bribery crime were "connected together" because the latter crime was charged based on the defendant's attempt to bribe the victim to drop the sexual offense charges. *Id.* at 693-95. In *Salinas*, the court held that sexual assault crimes and witness intimidation crimes were "connected together" where the latter crimes were charged based on the defendant's intimidation of the sexual assault victim and her mother. *Salinas*, 369 Wis. 2d 9, ¶44.

## *B. Analysis*

¶26 Here, the criminal complaints allege in pertinent part that: (1) in 2015 Watkins assaulted his girlfriend; Officer E.M. responded to investigate and arrest Watkins for that assault; and Watkins resisted arrest, causing substantial bodily harm to E.M., and escaped; and (2) in 2016 Watkins solicited E.M.'s killing to prevent her from testifying about the 2015 assaults and solicited a witness to testify falsely about those assaults because he thought E.M.'s testimony was the "only thing" that would cause him to "do the time" for the assault-related crimes.

¶27 Thus, as alleged in the criminal complaints, two of the eight assault-related crimes (escape and resisting an officer causing substantially bodily harm) and all three of the conspiracy-related crimes involve the same victim (Officer E.M.), all eleven charges involve the same perpetrator (Watkins), and the conspiracy-related crimes were committed to prevent punishment for all of the assault-related crimes. Accordingly, both sets of crimes are "connected together" under WIS. STAT. § 971.12(1).

¶28 In addition, to the extent that the conspiracy-related crimes arise from Watkins's efforts to prevent Officer E.M. from testifying about the assault-related

11

crimes and to solicit false testimony on the assault-related crimes, the facts of the assault-related crimes are necessary to provide context for the conspiracy-related crimes. Thus, consolidating both sets of crimes for trial serves the purposes of the joinder statute in that it promotes efficiency in judicial administration and avoids multiple trials of the same defendant on overlapping facts. *Id.*, ¶43.

¶29 Accordingly, we conclude that the two sets of crimes were properly joined under WIS. STAT. § 971.12(1).

¶30 We now address in turn Watkins's two arguments to the contrary: (1) the two sets of crimes are not "connected together" within the meaning of WIS. STAT. § 971.12(1); and (2) even if joinder was proper under § 971.12(1), the circuit court should have severed the two sets of crimes under § 971.12(3) because joinder was prejudicial.[4]

¶31 Watkins first argues that the crimes are not "connected together" because: (1) "the State cannot point to any evidence that the purpose of E.M.'s [killing] was to avoid punishment on the Assault charges"; (2) the two sets of crimes, arising "eleven months apart," were not "close in time"; and (3) the

---

[4] In his initial appellate brief, Watkins argues that joinder was improper because the two sets of crimes are not of the "same or similar character." Our conclusion that joinder was proper because the two sets of crimes are "connected together" is dispositive and, therefore, we need not address this argument. *See State v. Salinas*, 2016 WI 44, ¶34, 369 Wis. 2d 9, 879 N.W.2d 609 (we may uphold joinder "based solely on the 'connected together' language in WIS. STAT. § 971.12(1)"); *Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive."). Only in his reply brief does Watkins address the "connected together" basis for joinder under the statute, indicating that he had not addressed that basis in his initial appellate brief because the State relied in the circuit court on the "same or similar character" language in the statute and only on appeal argued joinder based on the statutory "connected together" language. For the sake of completeness, we proceed pursuant to our de novo review to address Watkins's argument in his reply brief that the charged crimes are not "connected together."

conspiracy-related crimes did not arise out of investigation of the assault-related crimes. This argument fails for at least the following reasons.

¶32     We begin by noting that Watkins's argument does not address three of the four bases for our conclusion that the two sets of charges are "connected together," namely, that the two sets of charges involve the same victim and the same perpetrator and joinder serves the goals and purposes of the statute. While Watkins briefly states why the State's contentions that joinder serves the goals and purposes of the statute (contentions that we do not adopt) fail, he does not affirmatively explain why joinder does *not* serve the statute's goals and purposes. Watkins's argument addresses only the fourth basis for our conclusion, that as alleged in the criminal complaint Watkins committed the conspiracy-related crimes to escape punishment for the assault-related crimes. We now explain why this argument lacks merit.

¶33     As stated, Watkins argues that "the State cannot point to any evidence that the purpose of E.M.'s [killing] was to avoid punishment on the Assault charges." Leaving aside that this assertion misrepresents the evidence, the focus of our inquiry is on the crimes alleged in the criminal complaint, not the evidence presented at trial. *See* WIS. STAT. § 971.12(1) (dealing with joinder of crimes in the same complaint). As shown above, those allegations suffice to support the determination that Watkins at least "arguably engaged in" the conspiracy-related crimes "to prevent disclosure [of] and punishment for" the assault-related crimes. *Salinas*, 369 Wis. 2d 9, ¶38.

¶34     Watkins's reference to the eleven-month gap between the two sets of crimes fares no better. He cites no case law supporting the proposition that the passage of months alone suffices to preclude joinder absent consideration of other

13

factors such as those we have considered above. On the contrary, our supreme court has held that incidents separated by six months, as in *Salinas,* 369 Wis. 2d 9, ¶¶11-14 (describing witness intimidation occurring in the six months following report of sexual assault), and even two years, as in *Bettinger*, 100 Wis. 2d at 693-94 (describing June 1978 sexual assault connected to June 1980 attempted bribery), may be "connected together."

¶35     Watkins's assertion that the conspiracy-related crimes did not arise out of investigation of the assault-related crimes is similarly inapposite because the question of whether one crime arose "out of the investigation of the other" is merely one in a non-exhaustive list of factors for the "connected together" analysis; as we have explained, the crimes in this case were connected together based on other factors. *See Salinas*, 369 Wis. 2d 9, ¶43 (listing non-exhaustive factors courts consider in determining whether crimes are "connected together" for purposes of joinder).

¶36     Watkins next argues that, even if the statutory criteria for joinder were met, Watkins was entitled to severance of the crimes under WIS. STAT. § 971.12(3) because he was substantially prejudiced by joinder. Specifically, Watkins argues that the State's relatively weak case for the conspiracy-related crimes was bolstered by the State's relatively strong case for the assault-related crimes and that the sheer number of the combined crimes prejudiced the jury against Watkins. As we now explain, Watkins fails to show the potential for prejudice necessary to warrant severance.

¶37     As a preliminary matter, the State argues that Watkins's prejudice argument is not properly before us because Watkins never moved the circuit court to sever the crimes. *See Salinas*, 369 Wis. 2d 9, ¶49 ("Failing to make a severance

14

motion, regardless of the reason, however, results in this issue not being ripe for our consideration."). Watkins counters that his objection to the State's motion for joinder, which referenced severance based on prejudice, sufficed to preserve the issue of prejudice for appeal. We need not decide this dispute because we conclude that, under controlling case law, Watkins fails to show the prejudice necessary to warrant severance.

¶38 Under the joinder statute, if "it appears that a defendant … is prejudiced by a joinder of crimes … the court may order separate trials of counts." WIS. STAT. § 971.12(3). "In evaluating the potential for prejudice, courts have recognized that, when evidence of the counts sought to be severed would be admissible in separate trials, the risk of prejudice arising because of joinder is generally not significant." *Locke*, 177 Wis. 2d at 597. As our supreme court explained in *Bettinger*, when one crime is commissioned in order to prevent punishment for a prior crime, evidence of the prior crime is admissible as "other acts" evidence to prove motive in a trial for the later crime, and evidence of the later crime is admissible as "other acts" evidence to prove consciousness of guilt in a trial for the prior crime. *Bettinger*, 100 Wis. 2d at 697-98 (evidence of sexual assault admissible to show motive for bribery and evidence of bribery admissible to demonstrate consciousness of guilt for sexual assault).[5] *See also Peters*, 70 Wis. 2d at 30 (evidence of burglary admissible to show motive for obstruction and evidence of obstruction admissible to show consciousness of guilt for burglary).

¶39 Here, evidence of the assault-related crimes would be admissible to show motive in a trial on the conspiracy-related crimes and evidence of the

---

[5] Though not admissible to show the defendant's character, evidence of other acts is admissible under WIS. STAT. § 904.04(2) if it is offered as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

conspiracy-related crimes would be admissible to show consciousness of guilt in a trial on the assault-related crimes. Therefore, Watkins cannot show prejudice from joinder of the crimes. Accordingly, his prejudice argument fails.

¶40    In sum, we conclude that Watkins fails to show that the circuit court erred in joining the two sets of crimes for trial.

## II. Newly Discovered Evidence

¶41    Watkins argues that James's post-trial arrests for impersonating an officer constitute newly-discovered evidence entitling Watkins to a new trial. We first explain the general legal principles and standard of review governing the circuit court's decision on a motion for a new trial based on newly-discovered evidence. We next provide additional pertinent background regarding the circuit court's denial of Watkins's postconviction motion. We then explain why we agree with the circuit court that James's post-trial arrests are not newly-discovered evidence justifying a new trial and why we reject Watkins's argument to the contrary.

### A. General Legal Principles and Standard of Review

¶42    "In order to set aside a judgment of conviction based on newly-discovered evidence, the newly-discovered evidence must be sufficient to establish that a defendant's conviction was a 'manifest injustice.'" *Plude*, 310 Wis. 2d 28, ¶32 (quoted source omitted). Our supreme court has set forth a two-step process for determining whether such a manifest injustice exists: first, the defendant must prove by clear and convincing evidence that the proffered evidence is in fact "newly-discovered evidence;" second, if the defendant meets that burden, the circuit court must determine that, had a jury heard the newly-discovered evidence, it would have

had a reasonable doubt as to the defendant's guilt. *Id.*, ¶¶32-33; *State v. McAlister*, 2018 WI 34, ¶¶31-32, 380 Wis. 2d 684, 911 N.W.2d 77.

¶43    The first step is completed when the defendant proves by clear and convincing evidence that: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative."[6]  *Plude*, 310 Wis. 2d 28, ¶32 (citing *State v. McCallum*, 208 Wis. 2d 463, 473, 561 N.W.2d 707 (1997)); *McAlister*, 380 Wis. 2d 684, ¶31.  The circuit court then moves to the second step and determines whether "a reasonable probability of a different outcome exists," that is, "whether a jury would find that the newly-discovered evidence had a sufficient impact on other evidence presented at trial that a jury would have a reasonable doubt as to the defendant's guilt."[7]  *Plude*, 310 Wis. 2d 28, ¶¶32-33.

¶44    We review the circuit court's decision on whether to grant a new trial based on newly-discovered evidence for an erroneous exercise of discretion.  *State v. Avery*, 2013 WI 13, ¶22, 345 Wis. 2d 407, 826 N.W.2d 60; *McCallum*, 208 Wis. 2d at 474.  However, whether a reasonable probability exists that, had the jury heard the newly-discovered evidence, it would have had a reasonable doubt as to the defendant's guilt is a question of law that we review de novo.  *Plude*, 310 Wis. 2d 28, ¶33; *McAlister*, 380 Wis. 2d 684, ¶36 (whether a jury considering the

---

[6] We follow the parties' lead and refer to these four criteria as the "four *Plude* criteria. *State v. Plude*, 2008 WI 58, 310 Wis. 2d 28, 750 N.W.2d 42.  The statute lists these same four prerequisites using slightly different language, requiring that the evidence "has come to the moving party's notice after trial," that "failure to discover the evidence earlier did not arise from lack of diligence" and that "the evidence is material and not cumulative." WIS. STAT. § 805.15(3)(a)-(d). The parties do not identify any difference that matters between the language in the statute and in *Plude*.

[7] For ease of reading, we refer to this part of the analysis as the "fifth *Plude* requirement."

17

old and new evidence would have a reasonable doubt as to the defendant's guilt is a legal determination).

## B. Additional Background

¶45    Before the circuit court, Watkins argued that James's post-trial arrests were newly-discovered evidence justifying a new trial because they were "additional evidence of his untrustworthiness" that "would have tipped the scales in Watkins's favor." The State opposed the motion, arguing that Watkins's proffered newly-discovered evidence "did not exist at the time of trial" and that, "at the time James testified, he had not even committed the crimes with which [Watkins] wished to impeach [James]." The State conceded that the first three *Plude* criteria had "technically" been met and focused the bulk of its argument on the fourth criterion, that the evidence not be merely cumulative.

¶46    The circuit court determined that evidence of James's post-trial arrests does not satisfy the four *Plude* criteria because it: (1) is not "newly-discovered" evidence but rather is "an entirely new set of purported facts"; (2) has "no relation to the charges or verdict and … did not stem from any actions or testimony that occurred during the trial"; and (3) is cumulative to evidence presented at trial regarding James's untrustworthy and dishonest character. The court also determined that Watkins failed to satisfy the fifth *Plude* requirement, that the evidence would have created reasonable doubt as to Watkins's guilt. The court observed, "Criminal trials often rely on testimony from witnesses that engage in criminal activities themselves, and the judicial system could not function if every conviction were subject to re-litigation once a witness engaged in new criminal activity following his or her testimony."

*C. Analysis*

¶47     As we now explain, Watkins fails to show that the circuit court erroneously exercised its discretion in denying his motion for a new trial based on evidence of James's post-trial arrests, because he fails to satisfy the first step of the *Plude* analysis—that the evidence of James's post-trial arrests is in fact "newly-discovered evidence." *Plude*, 310 Wis. 2d 28, ¶32.

¶48     The four *Plude* criteria that comprise the first step of the *Plude* analysis, by their terms, assume that the proffered evidence is of a fact that was true at or before the time of trial. *See, e.g., McCallum*, 208 Wis. 2d at 478, 484 (statement of victim, made after conviction of defendant for sexual assault, satisfied four criteria for newly-discovered evidence where statement concerned victim's statements at trial that led to conviction); *Plude*, 310 Wis. 2d 28, ¶¶34, 37, 41 (evidence that expert witness was not a clinical professor satisfied the four criteria for proving newly-discovered evidence where such evidence showed that witness lied under oath in the trial leading to conviction). Here, in contrast, the facts of James's post-trial arrests did not exist at or before trial.

¶49     The proposition that newly-discovered evidence must generally be of a fact that is true at the time of trial is bolstered by case law from the federal courts, whose analysis of newly-discovered evidence "requires proof of criteria nearly identical to that provided by Wisconsin law …." *State v. Jackson*, 188 Wis. 2d 187, 198 n.3, 525 N.W.2d 739. Most notably, the Seventh Circuit addressed the issue of post-trial events in *United States v. Bolden*, 355 F.2d 453, 461 (7th Cir. 1965), *cert. denied*, 384 U.S. 1012, a case with many parallels to the case at bar. In *Bolden*, the defendant moved for a new trial based on newly-discovered evidence consisting of the fact that a key government witness was, after trial, convicted of a counterfeiting

charge. *Id.* The court explained that the government witness's conviction "was not evidence that was in existence at the time of the defendant's trial and therefore did not constitute evidence upon which a new trial could be based," and that, moreover, the subsequent conviction "was merely cumulative and impeaching." *Id. See also United States v. Lafayette*, 983 F.2d 1102, 1105 (D.C. Cir. 1993) ("In general, to justify a new trial, 'newly-discovered evidence' must have been in existence at the time of trial. Events and transactions occurring after the trial obviously could not have been the subject of testimony at the trial.") (evidence that police officers who testified at defendant's trial later committed misconduct was not newly-discovered evidence). Other state courts addressing this issue pursuant to language virtually identical to Wisconsin's newly-discovered evidence rule are in accord. *See, e.g., State v. Bordelon*, 37 So.3d 480, 487 (La. Ct. App. 2010) (evidence of victim's criminal behavior three years after trial was not newly-discovered evidence and "could not possibly have been introduced at trial because it had not yet occurred"); *State v. Bartel*, 953 N.W.2d 224, 233 (Neb. 2021) ("Whereas an object is new at the moment that it begins to exist, it is newly-discovered once it is 'revealed' or 'found out' to have previously been in existence.") (order that was not entered until eight months after jury verdict was not newly-discovered evidence); *People v. Rogers*, ___ N.W.2d ___, 2020 WL 7409615, at *8-9 (Mich. Ct. App. 2020) (evidence that, after defendant was convicted of sexually assaulting victim, victim made false allegations of sexual assault against adoptive father and brother could not "have conceivably been the subject of testimony at trial" because the allegations occurred after trial).

¶50     Having established that evidence of facts that did not exist at the time of trial will not support in these circumstances a new trial based on newly-discovered evidence, we need not individually analyze each of the four *Plude*

20

criteria. However, for the sake of completeness and to refute Watkins's argument on the issue, we further explain why Watkins is unable to satisfy his burden for even the first of those criteria, that the evidence was discovered after conviction. *Plude*, 310 Wis. 2d 28, ¶32. *See McAlister*, 380 Wis. 2d 684, ¶¶50-51 (court's conclusion that one of the four *Plude* criteria is not met is sufficient to affirm denial of motion for new trial based on newly-discovered evidence). Simply put, it is a fallacy to characterize James's 2017 and 2018 arrests as "discovered after conviction," *McCallum*, 208 Wis. 2d at 473, or as coming to Watkins's "notice after trial," WIS. STAT. § 805.15(3)(a), because James's post-trial arrests, rather than being "discovered" or "noticed" after trial, simply happened after trial. The circuit court implicitly addressed this issue when it determined that James's arrests were "not newly-discovered" but were instead "an entirely new set of purported facts."

¶51 Events occurring post-conviction such as the development of new technology or a new scientific consensus can sometimes be considered the discovery of new evidence, but the new technology or new scientific consensus must relate to evidence that existed at the time of trial. *See, e.g., State v. Vollbrecht*, 2012 WI App 90, ¶¶12, 15, 20, 37, 344 Wis. 2d 69, 820 N.W.2d 443 (evidence comprising DNA analysis made possible by new technology was newly-discovered where the analyzed biological material existed at time of trial); *Avery*, 345 Wis. 2d 407, ¶¶5-7, 31, (evidence comprising enhanced video analysis made possible by new technology was newly-discovered where video tape and the events it depicted were in existence at time of trial); *State v. Edmunds*, 2008 WI App 33, ¶15, 308 Wis. 2d 374, 746 N.W.2d 590 (evidence comprising new medical consensus regarding Sudden Infant Death Syndrome was newly-discovered where it related to child's injuries and symptoms that were in existence at time of trial). Here, Watkins does not present new evidence of pre-existing but previously undiscoverable arrests but,

rather, presents evidence of arrests that occurred after the trial ended. Watkins has not proven by clear and convincing evidence that James's arrests were "discovered after conviction" within the meaning of the applicable law.

¶52 Watkins argues that, by stating that newly-discovered evidence must "stem from the actions or testimony that occurred during trial," the circuit court failed to apply the *Plude* test, "made up its own criteria" for newly-discovered evidence, "categorically reject[ed] 'subsequent arrests' as ever being 'newly discovered evidence,'" and applied an incorrect legal standard to newly-discovered evidence, thereby misusing its discretion. This argument fails because, as shown above, the circuit court did properly apply the *Plude* test to the evidence of James's post-trial arrests and explained why that evidence fails the test. The court specifically contrasted new, unrelated crimes such as those here with the post-trial discovery of crimes that existed at the time of trial, such as a witness's perjury before or during trial. Watkins fails to show that the court applied the incorrect legal standard.

## CONCLUSION

¶53 For the reasons stated, we conclude that Watkins fails to show that the circuit court erred in joining the assault-related crimes and the conspiracy-related crimes for trial or in denying his motion for a new trial based on newly-discovered evidence. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.