COURT OF APPEALS
DECISION
DATED AND FILED

November 5, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP469**

STATE OF WISCONSIN

Cir. Ct. No. 2009CF695

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

LAWRENCE J. TURNER,

    DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Brown County: TAMMY JO HOCK, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Lawrence Turner appeals from a circuit court order denying his WIS. STAT. § 974.06 (2021-22)[1] motion for postconviction relief. On appeal, he argues that the court erred by denying both his judicial substitution motion and his postconviction motion. In the alternative, Turner contends that he is entitled to a new trial in the interest of justice.[2] For the reasons that follow, we affirm the court's order.

## BACKGROUND

¶2 In 2010, Turner was convicted, following a bench trial, of one count of first-degree sexual assault of a child under the age of thirteen and two counts of misdemeanor battery as acts of domestic abuse. The circuit court found Turner guilty based on evidence that Turner sexually assaulted Ruth and physically abused Sadie, Ruth's mother.[3] Turner was found not guilty on two counts: strangulation and suffocation and felony intimidation of a victim, each as an act of domestic abuse.

¶3 In 2011, Turner filed a postconviction motion in the circuit court pursuant to WIS. STAT. § 974.02, in which his postconviction counsel argued three issues. In a written order, the court denied the motion. Turner appealed, and, in a

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Turner's appellate briefs fail to comply with WIS. STAT. RULE 809.19(8)(bm), which states that "[a] brief … must have page numbers centered in the bottom margin using Arabic numerals with sequential numbering starting at '1' on the cover." Our supreme court explained in a comment, when it amended the rule in 2021, that the pagination requirements avoid "the confusion of having two different page numbers" on certain pages of an electronically filed brief. S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii, cmt. at xl. (eff. July 1, 2021).

[3] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use pseudonyms when referring to the victims in this case.

per curiam opinion, this court affirmed the judgment of conviction and order denying postconviction relief. *See* ***State v. Turner***, No. 2011AP746-CR, unpublished slip op. ¶1 (WI App Jan. 31, 2012). Our state supreme court denied Turner's petition for review of that decision.

¶4 In December 2020, Turner filed a WIS. STAT. § 974.06 motion for postconviction relief, asserting three issues, each different from the issues raised in his first postconviction motion. First, Turner argued that his 2011 postconviction counsel were ineffective by failing to challenge the validity of Turner's jury waiver.[4] Second, Turner asserted that newly discovered evidence—in the form of Sadie's posttrial statements threatening the father of some of her children that she would "coach" those children into making false claims of sexual impropriety against him—warranted a new trial. Third, Turner argued that he was entitled to a new trial in the interest of justice.

¶5 In February 2021, a new judge was assigned to the case.[5] Approximately three months later, and citing WIS. STAT. § 971.20, Turner filed a motion for substitution of judge. The circuit court denied that motion after finding it was untimely.

---

[4] Turner was separately represented by two attorneys during the course of his 2011 postconviction proceedings, both of whom worked at the same law firm. The first attorney stepped down as Turner's counsel following her departure from the firm, at which point the second attorney began representing Turner.

[5] The Honorable J.D. McKay, Brown County Circuit Court Branch VI, presided over Turner's bench trial. Following Judge McKay's retirement, the Honorable John Zakowski became the judge in Branch VI. Because Judge Zakowski was the district attorney for Brown County during the trial phase of Turner's case, Judge Zakowski sought to have a different judge assigned to the case. The Honorable Tammy Jo Hock was then assigned the case.

¶6    The circuit court granted a *Machner*[6] hearing on Turner's ineffective assistance of postconviction counsel claim, at which both of his 2011 postconviction counsel testified. The court denied the motion following the hearing, concluding that the jury waiver claim was not "clearly stronger" than the claims pursued immediately following Turner's conviction. In addition, the court found that Turner's postconviction counsel chose not to pursue the jury waiver claim as part of a "legitimate strategy" of not subjecting Turner to a potentially more severe sentence upon remand from a successful appeal. The court denied Turner's remaining claims without a hearing. Turner now appeals.

## DISCUSSION

### I. Substitution

¶7    Turner argues that the circuit court erred by denying his motion for judicial substitution made under WIS. STAT. § 971.20. This issue requires us to interpret and apply § 971.20 and WIS. STAT. § 801.58, which presents a question of law that we review de novo using well-settled legal principles. *See State v. Gramza*, 2020 WI App 81, ¶15, 395 Wis. 2d 215, 952 N.W.2d 836; *State v. Jones*, 2021 WI App 15, ¶19, 396 Wis. 2d 602, 957 N.W.2d 551.

¶8    In civil actions, judicial substitution requests are governed by WIS. STAT. § 801.58, which dictates that a substitution request must be made within ten days "of receipt of notice of assignment" "[i]f a new judge is assigned." Sec. 801.58(1). Conversely, WIS. STAT. § 971.20 governs a defendant's right to substitution in "any criminal action." Sec. 971.20(2). An "action" under that

---

[6] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

section "means all proceedings before a court from the filing of a complaint to final disposition at the trial level." Sec. 971.20(1).

¶9      Proceedings under WIS. STAT. § 974.06 are "civil in nature," despite the fact that a motion under that section "is a part of the original criminal action." *See* § 974.06(2), (6); ***State ex rel. Krieger v. Borgen***, 2004 WI App 163, ¶11, 276 Wis. 2d 96, 687 N.W.2d 79. Moreover, WIS. STAT. § 971.20 cannot apply to § 974.06 proceedings because an "action" under § 971.20 ends at the final disposition of the criminal case at the trial level. *See* § 971.20(1).

¶10     Therefore, Turner's judicial substitution request was governed by WIS. STAT. § 801.58. Judge Hock was appointed to the case in February 2021. Turner did not file his substitution request until May 2021. Accordingly, the circuit court properly denied his substitution motion as untimely.

## II.  Ineffective assistance of counsel

¶11     Next, Turner argues that the circuit court erred by concluding that his 2011 postconviction counsel were not constitutionally ineffective when they failed to challenge the validity of Turner's waiver of his right to a jury. In the 2011 postconviction motion, Turner's postconviction counsel raised three grounds for a new trial: (1) the circuit court erroneously admitted an audiovisual recording containing statements by Ruth; (2) the court erroneously denied Turner's request for an in camera review of Ruth's confidential records; and (3) Turner's trial counsel was constitutionally ineffective by failing to request a mistrial—or have Ruth's testimony stricken—after someone was alleged to have coached Ruth from the gallery during her trial testimony.

¶12 To succeed on a claim for ineffective assistance of postconviction counsel based upon counsel's failure to raise an available issue in an earlier motion or on direct appeal, a petitioner must show that his or her counsel performed deficiently and that the deficient performance prejudiced his or her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Romero-Georgana*, 2014 WI 83, ¶36, 360 Wis. 2d 522, 849 N.W.2d 668. As part of the deficiency prong, the petitioner must show that "a particular nonfrivolous issue" is "*clearly stronger* than" the issues postconviction counsel did present. *Romero-Georgana*, 360 Wis. 2d 522, ¶¶45-46 (citation omitted).

¶13 Whether postconviction counsel was ineffective presents a mixed question of fact and law. *State v. Maday*, 2017 WI 28, ¶25, 374 Wis. 2d 164, 892 N.W.2d 611. We will accept a circuit court's findings of fact unless they are clearly erroneous. *Id.* "'[T]he circumstances of the case and the counsel's conduct and strategy' are considered findings of fact." *Id.* (alteration in original; citation omitted). We "will not second-guess a reasonable trial strategy, [unless] it was based on an irrational trial tactic or based upon caprice rather than upon judgment." *State v. Breitzman*, 2017 WI 100, ¶75, 378 Wis. 2d 431, 904 N.W.2d 93 (alteration in original; citation omitted). "[W]here a lower court determines that counsel had a reasonable trial strategy, the strategy 'is virtually unassailable in an ineffective assistance of counsel analysis.'" *Id.* (citation omitted). "A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence." *State v. Anderson*, 2019 WI 97, ¶20, 389 Wis. 2d 106, 935 N.W.2d 285. Whether counsel's performance was ineffective is a question of law we review do novo. *Maday*, 374 Wis. 2d 164, ¶25.

¶14 At the *Machner* hearing, both of Turner's 2011 postconviction counsel testified. Neither attorney had a specific recollection of Turner's case by

6

the time they testified at the 2021 hearing. However, both attorneys testified that, in general, one of the key considerations when appealing is to choose issues that will put a defendant in the best position for a new trial upon a successful outcome. Turner's first postconviction attorney explained this strategy, stating:

> But if you do take someone back to trial and you don't change the outcome of the trial, that's not going to help them very much, and sometimes it can open them up to being in a situation where, for a variety of reasons, they could potentially face a more serious sentence, either because of things they've done in the meantime or additional information that comes into play. So if you get them a new trial, you want to have them in a position where they are going to have a better chance.
>
> So, I mean, if the option is, okay, just get them a new trial and hope versus get them a new trial in a better position, you are always going to go with the better argument[, to] get them in a new trial in a better position.

¶15 In addition, Turner's first 2011 postconviction attorney stated that she always met with clients in person prior to filing a postconviction motion. During these meetings, she and the client would discuss what the client's goals were with the appeal, what issues were available to raise, what she thought would be the "smart path," and, ultimately, which issues, if any, the client wanted to raise. The second postconviction attorney was able to confirm through firm records that the first attorney had actually met in person with Turner for over an hour.

¶16 With respect to the strategy in this case, Turner's first 2011 postconviction attorney stated:

> [E]verything in [the 2011 postconviction motion] is directed toward[] a particular witness, and for me, looking at that, and knowing the way I think, and knowing the conversations that I would have had with [Turner's second postconviction attorney], and knowing the way that he

7

> thinks from having worked with him for so many years, that would have been a strategic decision aimed at ensuring that Mr. Turner was in the best position possible for a trial coming out.

According to the first attorney, pursuing the jury trial waiver issue may have obtained Turner a new trial, but it would not have changed the circumstances surrounding the trial—namely, the defense's ability to challenge Ruth's testimony and credibility. Turner's first attorney added that had she successfully challenged Turner's jury trial waiver, a second trial before a twelve-member jury would not have been preferable to Turner's defense "[b]ecause then you potentially have a child witness in front of a jury, and that is really not pretty. That has got the potential to blow up in someone's face very badly."

¶17 Turner's second 2011 postconviction attorney testified that he thought that the jury trial waiver claim was not raised in the 2011 postconviction motion because either Turner validly waived his right to a jury trial "or, strategically, we thought that" the issue did not "help us much." As to the latter reasoning, the second attorney testified that he and the first attorney attacked the issues related to Ruth because, "if there's a next time, we don't want the jury seeing the video, for instance. We want the child [who] was confused to be confused in front of the jury if there's a jury trial next time."

¶18 Furthermore, Turner's second 2011 postconviction attorney noted that Turner was acquitted of two charges by the circuit court. In his experience as a defense attorney, had Turner been given a second trial under the same circumstances as the first—i.e., if Turner had a limited ability to impeach Ruth— and been convicted by a jury, Turner would have likely received a "harsher sentenc[e]."

¶19    In a written order, the circuit court rejected Turner's argument that postconviction counsel, when considering which issues to raise on appeal, cannot consider the risks a new trial would bring to a defendant upon a successful appeal. Moreover, the court found that Turner's 2011 postconviction counsel had "a clear and objectively reasonable strategy throughout their handling of Turner's" 2011 postconviction motion and appeal. That strategy included obtaining Turner a new trial while placing him in a better position for an acquittal. The court noted that Turner's postconviction counsel were aware that obtaining a new trial—without changing the evidence before a jury—could result in Turner receiving a harsher sentence.

¶20    On appeal, Turner contends that ineffective assistance of counsel claims made under WIS. STAT. § 974.06 must be analyzed under the "clearly stronger" standard. Thus, according to Turner, the circuit court erred by analyzing whether his 2011 postconviction counsels' strategy was reasonable. We disagree. Our state supreme court has explained that "the clearly stronger standard may not be adequate when [postconviction] counsel ha[d] valid reasons for choosing one set of arguments over another. These reasons may include the preferences, even the directives, of the defendant." *Romero-Georgana*, 360 Wis. 2d 522, ¶46. Based on these statements, the deficiency prong's analysis under the traditional *Strickland* test may apply to a motion made under § 974.06.

¶21    Turner also contends that the circuit court's findings regarding the reasonableness of his 2011 postconviction counsels' strategy are clearly erroneous. According to Turner, if postconviction counsel "had successfully pursued the [jury trial waiver issue], the remedy would have been identical" to the ineffective assistance claim raised in the 2011 postconviction motion.

¶22    The circuit court found that Turner's first 2011 postconviction attorney met with Turner and discussed his postconviction options prior to filing the 2011 motion. Turner has not met his burden to show this finding is clearly erroneous. All three issues raised by postconviction counsel related to Ruth and would have likely placed Turner in a better position upon retrial by: (1) excluding Ruth's recorded interview; (2) introducing impeachment evidence against Ruth through her confidential records; and (3) undermining Ruth's credibility by showing that she was "coached" throughout her trial testimony. Postconviction counsel were cognizant of the fact that all three issues were interrelated, and they purposefully pursued those issues to place Turner in a better position upon remand for a new trial. The jury trial waiver issue was unrelated and, as Turner's first attorney testified at the *Machner* hearing, raising too many issues on appeal may detract from the strength of other issues. *See State v. Echols*, 175 Wis. 2d 653, 672, 499 N.W.2d 631 (1993) ("An implicit finding of fact is sufficient when the facts of record support the decision of the [circuit] court."). This strategy is particularly compelling where the issues actually raised in a postconviction motion are interrelated.

¶23    In addition, Turner challenges the circuit court's reasonableness findings on the ground that the court "failed to consider that any postconviction victory might favor Mr. Turner on remand." In support of this argument, Turner contends that had his 2011 postconviction counsel successfully raised the jury trial waiver claim, he would have had a different fact finder on remand, "any appellate victory would have strengthened Mr. Turner's bargaining position at retrial," and double jeopardy would have prevented him from being retried on the two counts of which he was acquitted.

10

¶24 However, as the State argues, "[i]t was not unreasonable for [Turner's 2011] postconviction counsel to decide that the risk of an increased sentence" upon remand "was not worth raising the jury [trial] waiver issue, especially given that counsel did not appear to believe [that] Turner had much likelihood of succeeding in a new trial absent being placed in a better position than the first trial." Moreover, Turner still could have faced a longer sentence upon remand for a new trial if he were convicted of the charges he faced—especially, and most importantly, the one count of first-degree sexual assault of a child under the age of thirteen, which carried a maximum possible sentence of sixty years. *See State v. Naydihor*, 2004 WI 43, ¶77, 270 Wis. 2d 585, 678 N.W.2d 220 (concluding that a defendant can be given a harsher sentence upon remand if there exists "objective information … justifying a sentence increase," which can include a victim's "deteriorated" "condition … since the original sentence proceeding"); WIS. STAT. §§ 948.02(1)(e), 939.50(3)(b). Accordingly, the circuit court properly denied Turner's ineffective assistance of postconviction counsel claim.

## III. Newly discovered evidence

¶25 Turner also challenges the circuit court's denial, without a hearing, of his present postconviction motion for a new trial based on newly discovered evidence. Turner's postconviction motion cited statements made by Sadie during a court-ordered Child Protective Services meeting in 2018, many years after Turner's trial and conviction. During the meeting, Sadie threatened the father of some of her children that she would "coach" her children into making false claims of sexual impropriety against the father. Turner also cited other statements allegedly made by Sadie, in which she accused the father and his then-romantic partner of sexual impropriety toward one of Sadie's other children.

¶26    In order to set aside a judgment of conviction based on newly discovered evidence, a defendant must first "prove by clear and convincing evidence that the proffered evidence is in fact 'newly[ ]discovered evidence,'" using four prerequisites identified by our state supreme court. ***State v. Watkins***, 2021 WI App 37, ¶¶42-43, 398 Wis. 2d 558, 961 N.W.2d 884 (citation omitted). Critically, implicit in the four prerequisites is that newly discovered evidence "must generally be of a fact that is true at the time of trial." ***Id.***, ¶¶48-49. If the defendant shows that the proffered evidence is newly discovered, "[t]he circuit court then moves to the second step and determines … 'whether a jury would find that the newly[ ]discovered evidence had a sufficient impact on other evidence presented at trial that a jury would have a reasonable doubt as to the defendant's guilt.'" ***Id.***, ¶43 (citation omitted).

¶27    Whether a defendant's postconviction motion for a new trial is sufficient to entitle him or her to an evidentiary hearing based on newly discovered evidence presents a two-step standard of review. First, "'we determine whether the motion on its face alleges sufficient facts that, if true, would entitle the defendant to relief.' We review this question of law, independently, based on the specific factual allegations made and the record as a whole." ***State v. McAlister***, 2018 WI 34, ¶25, 380 Wis. 2d 684, 911 N.W.2d 77 (citation omitted). "Second, 'if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief,' the decision to grant or deny a hearing is within the circuit court's discretion." ***Id.***, ¶26 (citation omitted).

¶28    Turner failed to allege sufficient facts in his present postconviction motion to be entitled to relief on his claim of newly discovered evidence. In ***Watkins***, this court concluded that evidence of a State witness's posttrial arrests

and convictions for impersonating an officer was not newly discovered because the arrests and convictions occurred after the defendant's trial. *Watkins*, 398 Wis. 2d 558, ¶¶2, 48-52.

¶29 The holding in *Watkins* dictates the outcome of Turner's newly discovered evidence claim. Turner does not dispute that Sadie's alleged threats made to another individual occurred well after his 2010 trial. As Sadie's alleged threats occurred years after Turner's trial, under *Watkins*, that evidence cannot be considered newly discovered. We, therefore, need not address whether Turner sufficiently alleged facts in his present postconviction motion to meet his burden to establish the other prerequisites for newly discovered evidence.

¶30 Turner, however, argues that the evidence of Sadie's alleged posttrial threats should nevertheless be considered newly discovered because the evidence "strongly suggest[s] that specific acts of perjury or witness tampering occurred in Mr. Turner's trial" and that Sadie made a pretrial decision to "coach" Ruth. In other words, Turner appears to argue that evidence of Sadie's posttrial threats to another could lead a reasonable fact finder to conclude that the same thing happened in his trial—Ruth testified falsely because her mother instructed her to do so. Further, Turner contends that this evidence would cause a trier of fact to question Ruth's credibility. According to Turner, evidence bearing on credibility is always material, and the circuit court relied upon Ruth's testimony to convict Turner. Thus, Turner argues, the newly discovered evidence would cause a reasonable doubt as to Turner's guilt.

¶31 However, none of the evidence put forth by Turner in his present postconviction motion demonstrates that Sadie made threats against Turner or coached Ruth to perjure herself. The alleged posttrial threats were made against

another individual, and there is no evidence suggesting that the threats were ever acted upon. Moreover, Turner does not argue that the circuit court erroneously exercised its discretion by denying his postconviction motion on this claim without a hearing. In all, the court did not err by denying Turner's motion based upon claimed newly discovered evidence.

## IV. Interest of justice

¶32    Lastly, Turner asks this court to grant him a new trial in the interest of justice pursuant to WIS. STAT. § 752.35 because "the credibility" of Ruth "has not been fully tried." Under § 752.35, we have the discretion to reverse and remand for a new trial "if it appears from the record that the real controversy has not been fully tried." "[T]he real controversy has not been tried if the jury was not given the opportunity to hear and examine evidence that bears on a significant issue in the case, even if this occurred because the evidence or testimony did not exist at the time of trial." *State v. Davis*, 2011 WI App 147, ¶16, 337 Wis. 2d 688, 808 N.W.2d 130 (alteration in original; citation omitted). To grant relief because a matter was not fully tried, "[w]e need not determine that a new trial would likely result in a different outcome." *State v. Williams*, 2006 WI App 212, ¶36, 296 Wis. 2d 834, 723 N.W.2d 719. However, discretionary reversal "should be exercised sparingly and with great caution." *Id.*

¶33    Turner's argument that the real controversy was not fully tried is essentially an attempt to relitigate issues raised in 2011 and addressed in our 2012 opinion. Further, we have already concluded in this opinion that Sadie's alleged threats, as outlined in the present postconviction motion, occurred after Turner's 2010 trial and are of little significance to Turner because they did not involve him and were apparently never acted upon. Therefore, the evidence does not "bear[]

14

on a significant issue" in Turner's case. *See Davis*, 337 Wis. 2d 688, ¶16 (citation omitted).

¶34 Moreover, Judge McKay stated at Turner's sentencing that he did not think that Ruth "made this all up" and that he "personally believe[d] that this happened. I found you guilty of it because I believed that it happened." Indeed, Turner was convicted after the allegation of coaching arose and after Ruth and Sadie were questioned under oath on the topic.[7] We also note that this court previously addressed the coaching issue in our decision affirming Turner's conviction, concluding that "[t]here is no evidence that the coaching occurred." *See **Turner***, No. 2011AP746-CR, ¶8. We decline to exercise our discretionary reversal authority in this case.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Turner suggests on appeal that the circuit court "clearly distrusted the testimony of [Sadie]" because it acquitted Turner of the charges related to "alleged physical violence against [Sadie]." However, Turner appears to ignore the fact that the court found Turner guilty of two counts of misdemeanor battery as acts of domestic abuse against Sadie.