STATE of Wisconsin, Plaintiff-Respondent,

v.

Corey E. YOUNG, Defendant-Appellant.†

Court of Appeals

*No. 2007AP2794–CR. Submitted on briefs August 18, 2008.*
*—Decided December 9, 2008.*

2009 WI App 22

(Also reported in 762 N.W.2d 736.)

† Petition to review denied 3/17/09.

114

On behalf of the defendant-appellant, the cause was submitted on the brief of *Jeffrey W. Jensen* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J. B. Van Hollen*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Curley, P.J., Kessler, J., and Daniel L. LaRocque, Reserve Judge.

¶ 1. CURLEY, P.J. Corey E. Young appeals from a judgment of conviction, after he pled guilty to first-degree intentional homicide as a party to a crime, contrary to Wis. Stat. §§ 940.01(1)(a) and 939.05 (2005–06).[1]

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

Young pled guilty after the trial court denied his motion to suppress statements he made during police interviews.[2] Young contends that the trial court erred when it denied his suppression motion because it failed to provide reasons on the record for its finding that police testimony was more credible than Young's. Young also appeals the order denying his postconviction motion seeking sentencing modification. He contends that the trial court erroneously exercised its discretion because it failed to establish a sufficient nexus between the sentencing factors it considered and the sentence it imposed.

¶ 2. After our review of the record, we conclude that neither of these arguments is persuasive. First, there is no precedent supporting the contention that a trial court must specifically state its reasons for finding that one witness is more credible than another. Second, because the trial court in this case placed substantial weight on the egregiousness of the offense in reaching its sentencing determination, and because the weight to be given each factor is within the discretion of the trial court, we hold that the trial court properly exercised its sentencing discretion. Accordingly, we affirm.

## I. BACKGROUND.

¶ 3. On July 7, 2006, police were dispatched to a park where, upon arriving, they discovered the body of Kevin Bohannon, who apparently had been shot to

---

[2] WISCONSIN STAT. § 971.31(10) states: "An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty."

death during a robbery. An autopsy later revealed that Bohannon had suffered two gunshot wounds and died as a result of the gunshot wound to the back of his head.

¶ 4. An investigation ensued, and police were eventually led to Young. After arresting Young, police interviewed him three times.[3] During the second interview, Young confessed to murdering Bohannon. He explained that on the morning of the shooting, he and two other men, Alfonzo Washington and John Luckett, were driving in a car, looking for a victim to rob, when they saw Bohannon walking near the Mitchell Park Domes. Luckett remained in the vehicle, while Young and Washington proceeded to get out of the car and attack and rob Bohannon. According to Young, he pointed a gun at Bohannon while Washington took Bohannon's MP3 player and shoes. Next, Young claimed that when he reached into Bohannon's pants pocket to remove his money, a struggle ensued, and Young shot Bohannon. After Bohannon fell to the ground, Young shot him one more time.

¶ 5. Young was charged with first-degree intentional homicide and armed robbery, use of force, both as a party to a crime, and a felon in possession of a firearm,

---

[3] There is some discrepancy as to whether Young was interviewed three or four times. Young's brief states that there were four interviews. However, the record indicates that there were only three main interviews, and that just as the third interview with Detective Salazar was about to conclude at 4:03 a.m., Detectives Formolo and Chavez notified Salazar that they had recovered evidence and wanted Young to look at a photograph. After reading Young his rights again, the detectives presented the photograph to him. Young looked at the photo and was then taken back to his cell at 4:21 or 4:22 a.m. Consequently, the "fourth" interview appears to have been a twenty-minute continuation of the third interview.

contrary to Wis. Stat. §§ 940.01(1)(a), 943.32(1)(a), (2), 939.05, and 941.29(2). According to the criminal complaint, the driver of the car, Luckett, told police that before Young and Washington left the car to attack Bohannon, Young told Washington to "[g]ive [him] the gun, [he'll] do him." Luckett also told police that Young insisted that he would shoot Bohannon because Washington "shot the last guy" and Young did not want Washington to "out do" him.

¶ 6. After confessing, Young filed a motion to suppress the statements he made, both oral and written. Young claimed that he was denied the right to an attorney during police questioning and that he was under the influence of drugs and alcohol during the interviews.

¶ 7. According to police testimony during the suppression hearing, after being arrested, Young was first interviewed at approximately 3:53 a.m. on September 22, 2006.[4] Young was questioned by Detectives Hensley and Formolo, and the interview lasted seven and one-half hours. Hensley testified that Formolo began by reading Young his *Miranda* rights.[5] After hearing his rights, Young acknowledged that he understood them. He did not ask for a lawyer at any time or indicate that he wished to remain silent. Furthermore, Hensley testified that Young denied being under the influence of drugs or alcohol, and that he did not appear to be under the influence at any time. Detective Formolo also testified that Young did not ask for a lawyer and that Young denied being under the influence of drugs or alcohol.

[4] The record is unclear as to how long Young had been in custody before his first interview. Young testified that it may have been an hour, but admitted that he could not remember.

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

121

¶ 8. The second interview commenced at 8:50 p.m. on September 22, 2006, and lasted almost ten hours. Young was interviewed by Detectives Heier and Gulbrandson. Heier testified that he read Young his *Miranda* rights, and that Young acknowledged he understood these rights because he had heard them at least twelve times before. According to Heier, Young did not ask for a lawyer or indicate he wished to remain silent. Also, although Heier did not recall asking Young if he was intoxicated, given that he had been in custody for almost twenty-four hours, Young did not appear to be under the influence. Detective Gulbrandson also confirmed that Young did not request a lawyer or ask to remain silent.

¶ 9. Detectives Salazar and Huerta commenced the third interview at 9:21 p.m. on September 23, 2006. The interview lasted approximately seven hours. Huerta read Young his *Miranda* rights and Salazar testified that Young agreed to waive his rights, which included the right to an attorney. Additionally, Salazar stated that Young did not appear to be under the influence of drugs or alcohol.

¶ 10. In contrast to the detectives' testimony, Young claimed that he was denied his right to an attorney and that he was under the influence of drugs and alcohol during police questioning. Young testified that, during the first interview, he was read his *Miranda* rights and that he understood them because "[he] know[s] the rights." Young insisted that he asked for a lawyer a number of times, but that the police refused and continued asking him questions. Similarly, Young also testified that he asked for an attorney during the second interview, but that again, police refused to comply with his request and continued with

their questioning. Finally, when asked about the third interview, Young stated that he did not ask for an attorney at that time.

¶ 11. To support his claim that he was under the influence of drugs and alcohol during police questioning, at the suppression hearing, Young testified that he was intoxicated with alcohol and marijuana at the time he was arrested. Young also stated that he had used cocaine earlier on the day of his arrest and that he had taken ecstasy approximately a day before. As a result, according to Young, when the detectives interviewed him for the first time, he was "confused" by the questions. During cross-examination, however, Young admitted that he told police that he was not under the influence of drugs or alcohol during the first interview. At the completion of the suppression hearing, the trial court denied Young's motion, finding the officers' testimony to be more credible than Young's.

¶ 12. After Young's motion to suppress was denied, Young agreed to plead guilty to the charge of first-degree intentional homicide, as a party to a crime. In exchange for his plea, the State agreed to dismiss and read in the charge of armed robbery, use of force, as a party to a crime, and to dismiss entirely the felon in possession of a firearm charge. Additionally, the State agreed to recommend that Young be allowed to apply for supervised release after approximately forty years of confinement. (Young's counsel requested that Young be eligible for supervised release after thirty years.)

¶ 13. At the sentencing hearing, the State recited the plea negotiation. The court sentenced Young to life imprisonment with eligibility for supervised release after fifty years of confinement.

¶ 14. Young then filed a postconviction motion to modify his sentence, in which he sought to become

eligible for supervised release after forty years of confinement, as recommended by the State in the plea agreement. Young argued that the court failed to provide sufficient reasoning to increase his confinement sentence from forty to fifty years. The court denied Young's motion, stating that its decision was based on the totality of circumstances presented, most notably "the absolute egregiousness of the offense." This appeal follows.

## II. ANALYSIS.

### A. The trial court properly denied Young's motion to suppress.

■■

¶ 15. On appeal, Young argues that the trial court's finding of fact that he did not invoke his right to counsel is clearly erroneous; consequently, he contends that the trial court erred in denying his motion to suppress.[6] Young maintains that the trial court should have been required to explain why it found the detectives' testimony regarding Young's alleged request for counsel to be more credible than his.[7] "In reviewing a motion to suppress, we apply a two-step standard of

---

[6] On appeal, Young has abandoned the second argument he raised in his motion to suppress, that he was under the influence of drugs and alcohol during police questioning. Consequently, we will not address it.

[7] To support his argument, Young cites WIS. STAT. § 968.073(2), which requires the State "to make an audio or audio and visual recording of a custodial interrogation of a person suspected of committing a felony unless a condition under s. 972.115(2)(a)1. to 6. applies or good cause is shown for not making an audio or audio and visual recording of the interrogation." However, he acknowledges that this statute did

review. First, we review the [trial] court's findings of historical fact, and will uphold them unless they are clearly erroneous. Second, we review the application of constitutional principles to those facts *de novo.*" *State v. Eason*, 2001 WI 98, ¶ 9, 245 Wis. 2d 206, 629 N.W.2d 625 (citations omitted). At a suppression hearing, the State must demonstrate two things: one, "that the defendant was informed of his *Miranda* rights, understood them and intelligently waived them," and, two, "that the defendant's statement was voluntary." *State v. Lee*, 175 Wis. 2d 348, 359, 499 N.W.2d 250 (Ct. App. 1993).

¶ 16. Young contends that he was denied his right to have an attorney present during police interviews. However, contrary to his claim, five different detectives testified that Young did not request an attorney, even after being read his *Miranda* rights. Additionally, both a detective and Young himself testified that Young acknowledged he understood the rights due, in part, to hearing them at least twelve times before. At the conclusion of the suppression hearing, the court denied Young's motion because it found the officers' testimony more credible than Young's.

¶ 17. Young argues that the trial court's finding that he did not invoke his right to counsel is clearly erroneous because the trial court did not explain why it found the detectives' testimony more credible. However, this position is problematic, given that "[i]t is well settled that the weight of the testimony and the cred-

not go into effect until January 1, 2007, and Young was interviewed in September 2006. Therefore, this statute is not relevant for purposes of this appeal.

ibility of the witnesses are matters peculiarly within the province of the trial court acting as the trier of fact." *Kleinstick v. Daleiden*, 71 Wis. 2d 432, 442, 238 N.W.2d 714 (1976) (footnote omitted). Accordingly, this court will "not reweigh the evidence or reassess the witnesses' credibility, but will search the record for evidence that supports findings the trial court made, not for findings it could have made but did not." *Dickman v. Vollmer*, 2007 WI App 141, ¶ 14, 303 Wis. 2d 241, 736 N.W.2d 202.

¶ 18. As Young accurately states in his brief, there is no precedent requiring the trial court to explicitly explain why it finds one witness more credible than another. Nevertheless, Young still asks the court to apply this standard here. In support of his request, Young relies on the reasoning set forth in sentencing discretion cases where courts are required to specify how the sentencing facts and factors considered relate to the sentence imposed. *See, e.g., State v. Gallion*, 2004 WI 42, ¶ 46, 270 Wis. 2d 535, 678 N.W.2d 197 ("[W]e require that the court, by reference to the relevant facts and factors, explain how the sentence's component parts promote the sentencing objectives. By stating this linkage on the record, courts will produce sentences that can be more easily reviewed for a proper exercise of discretion."). In opposition to Young's request, the State argues that Young is asking this court to "reject controlling law and to apply the standard of appellate review of a trial court's discretionary sentencing decision to the trial court's findings of fact and credibility determinations." If this court were to adopt this standard, the State continues, an immense body of case law would have to be overturned where appellate courts have held that they are bound to trial courts' credibility determinations unless clearly erroneous. Consequently, the State concludes, this court must decline to apply Young's rationale. We agree.

126

¶ 19. As the State correctly points out, it is well-established that there is no requirement for a trial court to utter precise " 'magic words' " while setting forth its findings of facts. *See Monson v. Madison Family Inst.*, 162 Wis. 2d 212, 215 n.3, 470 N.W.2d 853 (1991) (citing *Englewood Cmty. Apartments Ltd. P'ship v. Alexander Grant & Co.*, 119 Wis. 2d 34, 39 n.3, 349 N.W.2d 716 (Ct. App. 1984)). "An implicit finding of fact is sufficient when the facts of record support the decision of the trial court." *State v. Echols*, 175 Wis. 2d 653, 672, 499 N.W.2d 631 (1993); *see generally Chernetski v. American Family Mut. Ins. Co.*, 183 Wis. 2d 68, 80, 515 N.W.2d 283 (Ct. App. 1994) ("A trial court finding of ultimate fact need not be supplemented by commentaries on the evidence or reasons for which the findings are made.").

¶ 20. Here, the trial court's implicit finding was that Young's testimony that he requested counsel was not credible. Our review of the record supports this finding. Because this implicit finding is sufficient, the trial court was not required to supplement its finding with further commentary.

¶ 21. The trial court properly ensured that the State met both of its burdens to show, first, that Young was informed of his *Miranda* rights, understood them, and intelligently waived them, and, second, that Young's statement was voluntary. After considering the totality of the testimony, the trial court concluded that it

> believe[s] that [Young] was fully *Mirandized* before each of the interviews or questioning periods that took place, that he understood those, that he waived his right to counsel, did, in fact, agree to make statements

127

to law enforcement with regards to each of these situations and, ultimately, did, in fact, make statements, and they, in fact were freely and voluntarily made.

(Underlining omitted.) Consequently, we conclude that the trial court did not err in denying Young's motion to suppress evidence. Furthermore, we decline to adopt Young's proposal which would require the trial court to explain its reasoning for finding one witness more credible than another because this court does not have the authority to modify binding precedent. *See, e.g., Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997) ("[O]nly the supreme court, the highest court in the state, has the power to overrule, modify or withdraw language from a published opinion of the court of appeals.").

### B. The trial court properly exercised its sentencing discretion.

¶ 22. Young next contends that the trial court erroneously exercised its discretion because it failed to establish a sufficient nexus between the sentencing factors and the sentence imposed. Specifically, Young claims that the trial court failed to adequately explain why it increased the time he was required to serve before being eligible for supervised release from the State's recommendation of forty years to fifty. We disagree with Young's contention.

¶ 23. Because sentencing decisions are left to the sound discretion of the trial court, we review those decisions only to determine whether the trial court erroneously exercised its discretion. *Gallion*, 270 Wis. 2d 535, ¶ 17. A trial court erroneously exercises

discretion if it bases its decision on "clearly irrelevant or improper factors." *Id.* Because " 'sentencing decisions of the [trial] court are generally afforded a strong presumption of reasonability," we " 'follow[] a consistent and strong policy against interference with the discretion of the trial court in passing sentence.' " *Id.*, ¶ 18 (citations and brackets omitted). "Appellate judges should not substitute their preference for a sentence merely because, had they been in the trial judge's position, they would have meted out a different sentence." *McCleary v. State*, 49 Wis. 2d 263, 281, 182 N.W.2d 512 (1971).

¶ 24. Trial courts must exercise sentencing discretion on a " 'rational and explainable basis' " and must provide an explanation of their reasoning for imposing a particular sentence on the record. *Gallion*, 270 Wis. 2d 535, ¶ 39 (citation omitted). When determining a sentence, the three primary factors a court considers "are the gravity of the offense, the character of the offender, and the need for protection of the public." *State v. Harris*, 119 Wis. 2d 612, 623, 350 N.W.2d 633 (1984). In addition, courts also can consider the following factors:

> "(1) Past record of criminal offenses; (2) history of undesirable behavior pattern; (3) the defendant's personality, character and social traits; (4) result of presentence investigation; (5) vicious or aggravated nature of the crime; (6) degree of the defendant's culpability; (7) defendant's demeanor at trial; (8) defendant's age, educational background and employment record; (9) defendant's remorse, repentance and cooperativeness; (10) defendant's need for close rehabilitative control; (11) the rights of the public; and (12) the length of pretrial detention."

*Id.* at 623–24 (citation omitted). How much weight is given to each factor is within the trial court's discretion and may vary from case to case. *See Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975).

¶ 25. Here, Young argues that the trial court failed to sufficiently explain the sentencing factors it considered when deciding to make him eligible for supervised release after fifty years instead of after forty.[8] *See* Wis. Stat. § 973.014(1g)(a).[9] In support of his claim, Young relies on the concurrence in *State v. Taylor*, 2006 WI 22, ¶ 54, 289 Wis. 2d 34, 710 N.W.2d 466 (Bradley, J., concurring), which states, "[m]erely uttering the facts involved, invoking sentencing factors,

---

[8] In his brief, Young maintains that "the court did not even address the fact that we are only considering eligibility for supervised release." However, this assertion is not supported by the record. When issuing Young's sentence, the trial court stated that he would receive a life sentence and that the "only issue is whether or not *he'll ever be eligible for consideration for release . . . .* I will *make him eligible for consideration,* but it will not be before July 6th of 2056 at which point in time *he would then be eligible for consideration for release.*" (Emphasis added.)

[9] Pursuant to Wis. Stat. § 973.014(1g)(a), the trial court is afforded three options when determining a defendant's extended supervision eligibility date. The statute states, in relevant part, that a court may decide:

1. The person is eligible for release to extended supervision after serving 20 years.

2. The person is eligible for release to extended supervision on a date set by the court. Under this subdivision, the court may set any later date than that provided in subd. 1., but may not set a date that occurs before the earliest possible date under subd. 1.

3. The person is not eligible for release to extended supervision.

*Id.*

130

and pronouncing a sentence is not a sufficient demonstration of the proper exercise of discretion . . . . Courts must reference the relevant facts and factors, and explain on the record the linkage between the sentence given and the sentencing objectives."

■

¶ 26. Setting aside the fact that a concurring opinion is not controlling, this court is not persuaded by Young's argument that the trial court "[m]erely utter[ed] the facts involved, invok[ed] sentencing factors, and pronounc[ed] a sentence." *See id.* Based on our review of the record, we conclude that the trial court properly exercised its sentencing discretion. When reaching its decision, the trial court considered a number of sentencing factors including the nature and gravity of the offense, past convictions, acceptance of responsibility for those convictions, Young's general conduct and demeanor, the community's interest and need for protection, and the interest in Young's rehabilitation. After weighing all of these factors, the court decided that the appropriate sentence was fifty years of imprisonment before eligibility for supervised release.

¶ 27. Moreover, when denying Young's postconviction motion for sentence modification, the court clarified that its decision was based on:

the totality of circumstances presented – the absolute egregiousness of the offense (execution-style murder for a pair of shoes, a baseball hat, a little money, and an MP3 player), the defendant's desire to shoot someone and his subsequent comments about what he had done, his prior record, the comments of the victim's family and how the defendant's actions affected this family, and the absolute need to protect the community from the defendant.

¶ 28. As the record reveals, the trial court placed substantial weight on the "absolute egregiousness" of the crime when it determined that Young should be confined for fifty years instead of forty before being eligible for supervised release. As we have discussed, it is well within the purview of the trial court's discretion to assign more weight to one sentencing factor over another. *See State v. Stenzel*, 2004 WI App 181, ¶ 9, 276 Wis. 2d 224, 688 N.W.2d 20 ("The weight to be given each factor is still a determination particularly within the wide discretion of the sentencing judge.").

██ ██

¶ 29. Furthermore, even though the trial court is required to explain its sentencing rationale on the record, it is not required to explain the mathematical breakdown of how each sentencing factor relates to the term of confinement. *See State v. Fisher*, 2005 WI App 175, ¶¶ 21–22, 285 Wis. 2d 433, 702 N.W.2d 56. Additionally, where the trial court fails to provide precise reasons for its sentencing determination on the record, it is the duty of the appellate court " 'to search the record to determine whether in the exercise of proper discretion the sentence imposed can be sustained.' " *Taylor*, 289 Wis. 2d 34, ¶ 21 (quoting *McCleary*, 49 Wis. 2d at 282). Accordingly, we will not interfere with the discretion of the trial court in passing its sentence and we hold that the sentence is not clearly erroneous.

¶ 30. For the foregoing reasons, we affirm the judgment of conviction and the order denying Young's postconviction motion to modify his sentence.

*By the Court.*—Judgment and order affirmed.