COURT OF APPEALS
DECISION
DATED AND FILED

March 1, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP900-CR**

Cir. Ct. No. 2018CF4692

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

VONN YORKE,

      DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed in part, reversed in part, and cause remanded with directions*.

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Vonn Yorke appeals his judgment of conviction entered after a jury convicted him of human trafficking and receiving compensation for human trafficking. He argues that he is entitled to a new trial based on newly discovered evidence; that the trial court improperly admitted evidence relating to Yorke's Facebook posts and YouTube music videos as other-acts evidence; and that the trial court erred in denying his motion to require the State to specify with more certainty the dates for which the charges against him were based.

¶2 Upon review, we conclude that the trial court erroneously exercised its discretion by not properly reviewing Yorke's motion regarding newly discovered evidence, and we therefore remand this matter for a hearing on that issue. With regard to Yorke's other claims regarding the admission of the other-acts evidence and the denial of his motion relating to the specificity of the charges, we affirm.

**BACKGROUND**

¶3 The charges against Yorke involve M.H., who told police that Yorke had recruited her to engage in prostitution over the time frame of January 1, 2016 through June 15, 2018.[1] According to the criminal complaint, M.H. said that she met Yorke in 2015; they began dating and were living together in Milwaukee. M.H. stated that she initially conducted prostitution "dates" voluntarily, and that Yorke had told her that as soon as she had earned $50,000, they could both "retire." M.H. advertised on-line, and Yorke set the pricing for her "dates."

¶4 However, after about a year, M.H. said this arrangement "changed." She had met the $50,000 earnings goal "multiple times," but Yorke would not let

---

[1] The initial charges against Yorke also involved another victim, T.B. However, a trial held in March 2019 resulted in a mistrial when the jury was unable to reach a verdict. Subsequently, the information was amended to include only the charges involving M.H.

her stop conducting the prostitution dates. She stated that she had monetary quotas that Yorke set for her, and if she did not meet those quotas he beat her, which included punching her, throwing her to the ground, and kicking her. Yorke also threatened M.H. with a gun multiple times, and engaged in anal sex with M.H. as a "punishment." M.H. finally fled from Yorke in mid-June 2018 after he had beaten her "yet again," punching and choking her. M.H. estimated that she had received approximately $300,000 from prostitution, all of which she had given to Yorke.

¶5 Additionally, M.H. told police that Yorke was an aspiring rap artist, and posted videos on YouTube under the name "MM Veto." The police officer who interviewed M.H. viewed several of these videos, which showed Yorke rapping about "pimping."

¶6 Prior to trial, Yorke filed a motion to "make more certain" the dates relating to the charges listed in the information. The State argued that it was "as specific as [it] could be" and that "[t]his was a crime that happened over a length of time." The trial court agreed that the State had provided enough information to give Yorke proper notice, and denied his motion.

¶7 The State in turn filed motions to admit nine Facebook posts and three YouTube music videos posted by Yorke as other-acts evidence. The Facebook posts consisted of conversations with women that the State contended were attempts to recruit them for prostitution, as well as statements by Yorke relating to Backpage— a website where advertisements for prostitution are posted. The music videos showed Yorke rapping, with lyrics that the State contended referenced the commercial sexual exploitation of women "commonly referred to as 'pimping.'" Yorke also made references in his Facebook posts to those lyrics, which he stated were all "true." The State asserted that the posts and videos demonstrated his

3

"motive, intent, plan and scheme to recruit women into the commercial sex industry." The trial court agreed that the evidence was being proffered for an acceptable purpose, and that it was relevant and probative. It therefore granted the State's motions.

¶8      As noted above, Yorke's first trial ended in a mistrial. That trial included testimony from Adam Comer as a witness for the defense. Comer was a personal trainer who had met M.H. in 2018 at a fitness club, and they dated during that summer. Comer testified that M.H. told him she was living with her ex-boyfriend, Veto. Comer stated that after he and M.H. broke up, he contacted Veto—Yorke—who told Comer that he was M.H.'s boyfriend, and that Comer was just a "side piece."

¶9      On cross-examination, Comer testified that M.H. had told him that "everything [Yorke] has she gave to him[.]" Comer also stated that he had taken M.H. to the hospital at one point to be treated for injuries to her ribs. Comer further testified that he "lost trust" in M.H. because he "didn't really know what was going on" between her and Yorke.

¶10      During the second trial, Comer was not available to testify, but his testimony from the first trial was read into the record.[2] Additionally, M.H. testified with regard to her relationship with Comer. In particular, she stated that Comer knew Yorke was her pimp, and that she was trying to leave Yorke; that she knew Comer had feelings for her, but that she did not feel the same way about him; and

---

[2] At the time of the second trial, Comer was in custody in Georgia. Yorke attempted to procure Comer's appearance for his second trial, but was unsuccessful. Yorke then moved the trial court to allow Comer's testimony from Yorke's first trial to be admitted at his second trial.

that Comer "snitched" about her relationship with Comer to a mutual friend of his and Yorke's.

¶11     After the jury convicted him in the second trial, Yorke filed a motion to vacate the verdicts on the grounds that he had obtained newly discovered evidence demonstrating that he had not trafficked M.H. Yorke asserted that a private investigator hired by the defense had obtained new information from Comer that "contradict[ed] the majority of [M.H.'s] trial testimony and ultimately her credibility." Yorke obtained an affidavit from Comer which included statements that M.H. tried to recruit Comer to be her new pimp, that she solicited Comer to rob Yorke at gunpoint, and that she told Comer she had "literally manufactured lies" about her previous pimp in order to send him to prison "so that she would never have to deal with him again." Comer stated that M.H. never told him she was being trafficked by Yorke or that she needed to be "helped or rescued from that situation." In fact, Comer characterized M.H. as being manipulative, and that she could be "very aggressive and even violent."

¶12     The trial court denied Yorke's motion at sentencing without hearing arguments from the parties, stating that it was a matter for the "appellate process" and that it was "not going to interfere with the jury's verdict." The court then sentenced Yorke to a thirteen year prison term for the charge of human trafficking, bifurcated as eight years of initial confinement and five years of extended supervision; and a ten year term for the charge of receiving compensation for human trafficking, bifurcated as five years of initial confinement and five years of extended supervision, to be served concurrently. This appeal follows.

**DISCUSSION**

*Claim of Newly Discovered Evidence*

¶13     We first address Yorke's argument that the statements by Comer, upon which Yorke based his motion to vacate the verdicts in his second trial, constitute newly discovered evidence warranting a new trial. "The decision to grant or deny a motion for a new trial based on newly[ ]discovered evidence is committed to the [trial] court's discretion." **State v. Plude**, 2008 WI 58, ¶31, 310 Wis. 2d 28, 750 N.W.2d 42. "A [trial] court erroneously exercises its discretion when it applies an incorrect legal standard to newly[ ]discovered evidence." **Id.**

¶14     The determination of whether a new trial is warranted based on newly discovered evidence is a two-step process. **State v. Watkins**, 2021 WI App 37, ¶42, 398 Wis. 2d 558, 961 N.W.2d 884. First, the defendant must prove, by clear and convincing evidence, that:  "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." **Plude**, 310 Wis. 2d 28, ¶32 (citation omitted).

¶15     If the defendant proves these four criteria, the trial court must then determine "whether a reasonable probability exists that had the jury heard the newly[ ]discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." **Id.**  This determination is a question of law that we review *de novo*. **Watkins**, 398 Wis. 2d 558, ¶44, 961 N.W.2d 884. Furthermore, "[i]f the newly discovered evidence fails to satisfy any one of these five requirements, it is not sufficient to warrant a new trial." **State v. Eckert**, 203 Wis. 2d 497, 516, 553 N.W.2d 539 (Ct. App. 1996).

6

¶16    Here, the trial court denied Yorke's motion alleging newly discovered evidence without engaging in an analysis of the ***Plude*** factors, instead declaring it a matter for this court to consider.  This is clearly not the correct legal standard that should have been applied.  *See **Plude***, 310 Wis. 2d 28, ¶31; *see also **State v. Malcom***, 2001 WI App 291, ¶12, 249 Wis. 2d 403, 638 N.W.2d 918 (whether the trial court applied the proper legal standard is a question of law).  We therefore conclude that the trial court erroneously exercised its discretion with regard to Yorke's motion.  *See **Plude***, 310 Wis. 2d 28, ¶31.

¶17    Furthermore, although we "generally look for reasons to sustain the trial court's discretionary decisions," *see **State v. Lock***, 2012 WI App 99, ¶43, 344 Wis. 2d 166, 823 N.W.2d 378, "there should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth" in order for a discretionary decision to be upheld, *see **State v. Hunt***, 2003 WI 81, ¶42, 263 Wis. 2d 1, 666 N.W.2d 771 (citation omitted).  On the contrary, the record in this case indicates that the trial court did not exercise *any* discretion in rendering its decision denying Yorke's motion.  The court did not even discuss the alleged newly discovered evidence submitted by Yorke, let alone make any findings regarding the same.  Weighing evidence and making credibility determinations are matters for the trial court.  *See **State v. Young***, 2009 WI App 22, ¶17, 316 Wis. 2d 114, 762 N.W.2d 736.

¶18    Moreover, the trial court did not engage in either step of the ***Plude*** process for analyzing alleged newly discovered evidence.  *See **id.***, 310 Wis. 2d 28, ¶32.  Additionally, the parties dispute whether the evidence submitted by Yorke meets the first four ***Plude*** factors.  The court of appeals does not have the power to make findings of fact where the evidence is in dispute.  *See **Gottsacker v. Monnier***, 2005 WI 69, ¶35, 281 Wis. 2d 361, 697 N.W.2d 436.  Therefore, findings by the

trial court regarding the evidence submitted by Yorke, and an analysis applying all of the *Plude* factors to that evidence, are required in order to resolve Yorke's motion. *See id.*, 310 Wis. 2d 28, ¶32. Accordingly, we remand this matter to the trial court for a hearing on Yorke's motion that includes such an analysis. *See State v. Love*, 2005 WI 116, ¶¶54-55, 284 Wis. 2d 111, 700 N.W.2d 62 (where our supreme court remanded the matter to the trial court for an evidentiary hearing to make findings regarding alleged newly discovered evidence submitted by the defendant).

*Admission of Facebook Posts and YouTube Videos*

¶19 We next turn to Yorke's claim that the trial court erred in admitting evidence relating to Yorke's Facebook posts and YouTube music videos as other-acts evidence. Other-acts evidence may be proffered for an acceptable purpose under WIS. STAT. § 904.04(2) (2019-20),[3] such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Sullivan*, 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998). The three-step test adopted in *Sullivan* for determining the admissibility of other-acts evidence asks: (1) whether the evidence is being offered for a proper purpose, that is, establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; (2) whether the evidence is relevant; and (3) whether the probative value of the evidence substantially outweighs the danger of unfair prejudice to the defendant. *Id.* at 772-73.

¶20 The party seeking to admit the other-acts evidence bears the burden of proving the first two steps, with the burden then shifting to the party opposing

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

the evidence to meet the third step. *State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399. We review the trial court's admission of other-acts evidence under the erroneous exercise of discretion standard, and will uphold that decision if the court "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion that a reasonable judge could reach." *Id.*, ¶17 (citation omitted).

¶21 At the hearing on the State's motion to admit this evidence, the State argued that it was seeking to admit the Facebook posts to demonstrate Yorke's "intent to exploit women for a commercial purpose for his own financial benefit," in particular noting the "conversations" in which Yorke appears to be attempting to recruit other women for purposes of engaging in commercial sex acts. The posts also included a photograph of Yorke which trial counsel argued "portray[ed] him as someone who appears to look like a human trafficker because he's wearing—I guess for lack of a better word—bling." Counsel asserted that this was indicative of racial bias, as opposed to supporting one of the proper purposes for admission of the evidence under WIS. STAT. § 904.04(2)(a). Yorke further argued that these conversations violated his right to confrontation, because the women who were involved were not on the State's witness list.

¶22 However, the State countered that the statements were not testimonial and therefore Yorke's right to confrontation was not invoked; rather, they were business records of Facebook, and were admissible under that hearsay exception. *See* WIS. STAT. § 908.03(6). Furthermore, regarding the photograph, the State argued that it was seeking its admission for the comment included with it: "If you can trick em then you can beat em."

¶23 The trial court determined that the Facebook posts met the requirements of *Sullivan*: that they were being "offered for an acceptable purpose such as intent, identity"; that they were "relevant under [WIS. STAT.] § 904.01"; and that "because they have a tendency to make a consequential fact more probable or than it would be able—with or without the evidence. So—and it's probative. And so that probative value substantially outweighs the danger of unfair prejudice." Therefore, the court deemed the Facebook posts admissible.

¶24 Similarly, the State argued that lyrics in Yorke's music videos "go towards showing [Yorke's] motive, [his] intent, and his plan to commercially sexually exploit women." Yorke, in contrast, asserted that he was an "entertainer," that he did not write the lyrics of the music in the videos, and that they are simply "what sells in the industry." The State then pointed out the Facebook post where Yorke stated that "everything in his rap video is true," which the State asserted is Yorke "admitting that what he's rapping about is real."

¶25 The trial court again held that the *Sullivan* test had been met for the music video evidence: "that evidence is offered for an acceptable purpose. And it's relevant and probative." The court therefore deemed that evidence admissible as well.

¶26 The trial court did not provide a particularly detailed *Sullivan* analysis regarding any of this evidence. However, after our independent review of the record—which we are required to conduct for challenges to other-acts evidence under the independent review doctrine, *see Hunt*, 263 Wis. 2d 1, ¶4—we agree that there were reasonable bases pursuant to *Sullivan* described by the State at the hearing, as we explained above, that justify the trial court's decision to admit both the Facebook posts and the music videos. *See Sullivan*, 216 Wis. 2d at 772-73.

10

Therefore, the trial court did not erroneously exercise its discretion in admitting that evidence. *See Marinez*, 331 Wis. 2d 568, ¶17.

*Denial of Motion for Specificity of the Dates of the Offenses*

¶27     Finally, we review Yorke's claim that the trial court erred in failing to grant his motion that essentially sought to dismiss the information for failing to provide specific dates for the charges against Yorke. This challenge of the sufficiency of the complaint and information implicates Yorke's constitutional due process right to be "informed of the nature and cause of the accusation against him." *See State v. Kempainen*, 2015 WI 32, ¶19, 361 Wis. 2d 450, 862 N.W.2d 587 (citation omitted). The resolution of this issue requires the court to consider "whether the defendant can determine if the complaint and information 'states an offense to which he [can] plead and prepare a defense and whether conviction or acquittal is a bar to another prosecution for the same offense.'" *Id.* (citation omitted). Our inquiry focuses on "the facts alleged in the complaint and the elements of the crimes involved" and whether they "identify the alleged criminal conduct with reasonable certainty." *Id.*, ¶¶19-20. We independently review challenges to constitutional principles. *State v. Pinno*, 2014 WI 74, ¶36, 356 Wis. 2d 106, 850 N.W.2d 207.

¶28     At the hearing on this motion, the State argued that it had been as specific as it could be due to the length of time over which these crimes had been committed. On appeal, the State's response brief expands on that argument, and includes a discussion of the applicability of several factors that are considered when

11

evaluating the sufficiency of a complaint of child sexual assault, known as the *Fawcett* factors.[4]  *See Kempainen*, 361 Wis. 2d 450, ¶¶23-24.

¶29    Yorke did not refute the State's argument in his reply brief.  Generally, arguments not refuted are deemed admitted.  *See State v. Alexander*, 2005 WI App 231, ¶15, 287 Wis. 2d 645, 706 N.W.2d 191.  Furthermore, after independently reviewing the complaint and information, we conclude that the charges against Yorke alleged facts and criminal conduct with reasonable certainty.  *See Kempainen*, 361 Wis. 2d 450, ¶¶19-20.  Therefore, the trial court did not err in denying Yorke's motion.

*Conclusion*

¶30    In short, we affirm the trial court's admission of the Facebook posts and music videos as other-acts evidence, as well as the court's denial of Yorke's motion for more specificity in the information.  However, we reverse the trial court's denial of Yorke's motion to vacate the verdicts on the ground of newly discovered evidence, and remand that matter for a hearing on that motion as described in this opinion.  We note that with this instruction we are not determining whether the evidence submitted by Yorke constitutes newly discovered evidence.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded with directions.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] *See State v. Fawcett*, 145 Wis. 2d 244, 426 N.W.2d 91 (Ct. App. 1988).