COURT OF APPEALS
DECISION
DATED AND FILED

**August 31, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP251**

STATE OF WISCONSIN

Cir. Ct. No. 2021ME378

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF D.E.S.:

WINNEBAGO COUNTY,

PETITIONER-RESPONDENT,

V.

D. E. S.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Winnebago County: JOHN A. JORGENSEN, Judge. *Affirmed.*

¶1    GROGAN, J.[1] D.E.S. appeals from WIS. STAT. ch. 51 orders extending his involuntary medication and inpatient treatment.  He asserts two arguments:   (1) the circuit court failed to make specific factual findings with reference to which subdivision paragraph of WIS. STAT. § 51.20(1)(a)2 it relied upon in determining dangerousness as required by *Langlade County v. D.J.W.*, 2020 WI 41, ¶59, 391 Wis. 2d 231, 942 N.W.2d 277; and (2) there is insufficient evidence to show he was dangerous.  This court affirms.

## I.  BACKGROUND

¶2    D.E.S. has schizoaffective disorder, bipolar type—a mental illness that his treating psychiatrist, Dr. Odette Anderson, identifies as a significant disorder of mood, thought, perception, orientation, or memory that grossly impairs his judgment, behavior, or capacity to recognize reality.  Dr. Anderson sent a letter to Winnebago County in July 2021 requesting the County "prepare a petition for the extension of [D.E.S.'s civil commitment.]"    The letter expressed Dr. Anderson's opinion that D.E.S. has a mental disorder, is a proper subject for commitment, and is dangerous under all five statutory standards in WIS. STAT. § 51.20(1)(a)2.  The doctor opined that D.E.S. "continues to be and is a proper subject for treatment" and that despite explaining to him "the advantages, disadvantages and alternatives to the psychotropic medications" he is taking, "[D.E.S.] is not capable of expressing an understanding of the advantages, disadvantages or alternatives or appreciating how he benefits from those options."

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶3  In September 2021, the County filed a petition for D.E.S.'s recommitment[2] and indicated he is dangerous under all five of WIS. STAT. § 51.20(1)(a)2's standards. A hearing on the petition was scheduled for October 12, 2021. On that date, D.E.S.'s attorney told the circuit court that the parties had reached an agreement and that D.E.S. would not contest the recommitment. However, when the court asked D.E.S. directly to confirm his no-contest decision, D.E.S. told the court his attorney was wrong and that he *did* want to contest the recommitment petition and have a hearing. The County thereafter re-contacted Dr. Anderson, who had previously been released based on the representation that D.E.S. would not be contesting the petition, and Dr. Anderson returned to provide her testimony. After hearing Dr. Anderson's testimony, the circuit court ultimately continued the hearing to another date to allow for additional witness testimony.

¶4  At the October 12th hearing, Dr. Anderson testified and:

- Agreed D.E.S. "evidenced a substantial probability [that] if left untreated he lacks services necessary for his health or safety" as "he has demonstrated a significant danger to others, and he has demonstrated a decrease in that type of dangerousness when he has been treated with medicine to when he was not."

- Agreed that there is evidence "that would suggest [D.E.S.] presents a substantial probability that if left untreated, he would suffer either severe mental, emotional, or physical harm resulting in his loss of ability to function independently within the community[,]" and she provided multiple examples that show D.E.S. "is a person who

---

[2] "Recommitment" is synonymous with "extension of commitment," and the terms will therefore be used interchangeably. *See* **Sheboygan County v. M.W.**, 2022 WI 40, ¶6 n.3, 402 Wis. 2d 1, 974 N.W.2d 733.

would have some difficulty carrying out the everyday activities of life and the demands of ordinary life."

- Confirmed, when asked, that if not treated, D.E.S. would lose "cognitive or volitional control of his thoughts and actions" as he had "been violent with people in the community" when not on treatment and that the violence "would be repeated" if treatment was withdrawn.

- Testified that D.E.S. "severely injured one [of] the employees at a group home where he was" and that "in the periods of time even here at Mendota Mental Health Institute when we have made decisions to decrease dosing of his medication, this is a standard procedure, he has not been able to demonstrate safety or maintain the decrease in the symptoms that he experiences."

- Explained that even with treatment, D.E.S. "can be quite dangerous" and has had "breakthrough" events showing he is dangerous, including a January 2021 incident where D.E.S. mistakenly believed staff members were throwing water in his room, which resulted in D.E.S. "charg[ing] at staff and attempting to punch staff." Staff had to take D.E.S. down to the ground and handcuff him, after which he "began to spit at staff."

- Stated that if D.E.S. was returned to the community, he would not partake in treatment "because he has demonstrated poor insight into his illness and need for treatment" as D.E.S. denies having a mental illness and thinks his medication is for a sleep disorder.

- Opined that the least restrictive environment for D.E.S. would be: "A locked facility with security, with medical staff as well as security staff available and to supervise and manage his violent behaviors and manage his medical, including his psychiatric medical, treatment."

¶5     When the recommitment hearing continued on October 19, 2021, the County called two of D.E.S.'s nurses. The first nurse testified about personally witnessing the January 2021 incident where D.E.S. got angry and tried to hit a

staff member. This nurse said D.E.S.'s conduct caused him to be "concerned for [his] safety, the patients' safety, and the other staff's safety[.]" The second nurse also testified about the January 2021 incident and recalled it as D.E.S. attempting to "start a fight," after which D.E.S. was "taken down" and placed in a seclusion room. When the second nurse went to check on D.E.S. through the room's trap door, D.E.S. "started spitting towards the trap," D.E.S. was "agitated" and "still yelling," and the incident caused the nurse to be concerned for his own safety.

¶6     After the testimony concluded, the County, in its closing argument, specifically referenced the recommitment requirements at issue. First, the County argued there was evidence supporting proof under WIS. STAT. § 51.20(1)(am) that D.E.S. remains a proper subject for treatment and is dangerous because if treatment were withdrawn, he would become a proper subject for a commitment. Second, the County argued there was evidence supporting recommitment under "one of the dangerous standards under [§] 51.20" as required by *D.J.W.* *See* *D.J.W.*, 391 Wis. 2d 231. The County asserted the evidence supported a finding of dangerousness under the second and fifth statutory standards, § 51.20(1)(a)2.b and § 51.20(1)(a)2.e, respectively.

¶7     D.E.S.'s counsel then argued that the County failed to prove dangerousness under *D.J.W.* because the violent event testified to was too remote in time to keep D.E.S. committed, that D.E.S. was taking his medication, and that it did not matter whether D.E.S. believed his medication was sleeping pills.

¶8     The circuit court ordered the extension of the commitment, both for inpatient treatment and medication. In doing so, it found Dr. Anderson's and the nurses' testimony to be credible. In addressing dangerousness, the circuit court said:

> The issues of dangerousness, you know, the fact that this is an extension so certainly during the first petition there was that finding made of dangerousness and now while still in a locked setting, in these circumstances, there's -- there was -- we don't have full facts of what happened, but certainly, we recognize that [D.E.S.] was challenged, was frustrated, was upset, and what we learned is this is how he acts out violently which is he tries to attack another individual. But then even when in a secured setting, in that setting, he attempted to spit at a staff member which in this day in age is very dangerous with all of the diseases and COVID and everything else that's going on so this is all concerning.
>
> And so I'm going to find in context of this being an extension that at the time this petition was filed, certainly it was relevant, and so it is today at the final hearing. So I'm going to find that the grounds do exist for the extension of commitment, that [D.E.S.] is mentally ill, dangerous pursuant to the factors listed in Chapter 51. Specifically, that he would decompress and deteriorate without this commitment, that he has shown that he is dangerous to other people as well[.]

¶9     The circuit court also specifically found that "medication is necessary to prevent serious physical harm to himself or others" and therefore ordered an extension of D.E.S.'s commitment with involuntary administration of medication for another twelve months.[3]  D.E.S. appeals.

## II. DISCUSSION

¶10    This case involves a WIS. STAT. ch. 51 recommitment, which is governed by WIS. STAT. § 51.20.  To involuntarily commit an individual, a county must establish by clear and convincing evidence that the person is mentally ill, a proper subject for treatment, and dangerous.   Sec. 51.20(1)(a)1-2, (13)(e), (13)(g)3; *Waukesha County v. J.W.J.*, 2017 WI 57, ¶18, 375 Wis. 2d 542, 895

---

[3]  The orders are dated October 19, 2021, and continue until October 19, 2022.

N.W.2d 783. D.E.S. challenges only the dangerousness criterion. Specifically, he first argues that the circuit court failed to comply with the **D.J.W.** directive requiring circuit courts "to make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based." *See* **D.J.W.**, 391 Wis. 2d 231, ¶3. Second, D.E.S. contends that the County failed to present sufficient evidence to establish that he is dangerous.

¶11 In order to prove dangerousness in an initial commitment, a county must present evidence that satisfies one of the five criteria set forth in WIS. STAT. § 51.20(1)(a)2. **D.J.W.**, 391 Wis. 2d 231, ¶30. When a county seeks recommitment, dangerousness may be established under § 51.20(1)(am), which recognizes that a person who has been treated and medicated under the initial order "'may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior[.]'" **D.J.W.**, 391 Wis. 2d 231, ¶33 (citation omitted). Reliance on § 51.20(1)(am) establishes that the person is still dangerous because if treatment is withdrawn, one of the five criteria in § 51.20(1)(a)2 would recur. Thus, a circuit court, in extending a commitment in reliance on (am), must link that determination to one of the five dangerousness criteria in § 51.20(1)(a)2. **D.J.W.**, 391 Wis. 2d 231, ¶¶3, 32-34.[4]

¶12 Whether a county has proven all required facts in a recommitment proceeding "by clear and convincing evidence" presents "a mixed question of law and fact." *Id.*, ¶¶23-24. This court "will uphold a circuit court's findings of fact

---

[4] This court is not persuaded by D.E.S.'s contention that the January 21 incident evincing his dangerousness was too remote to support a dangerousness finding as this is a recommitment where presumably the treatment D.E.S. receives primarily prevents actual violent acts. *See* WIS. STAT. § 51.20(1)(am).

unless they are clearly erroneous." *Id.*, ¶24. A factual finding "is clearly erroneous if it is against the great weight and clear preponderance of the evidence." *Id.* This court then determines "whether the facts satisfy the statutory standard." *Id.*, ¶25. In assessing the circuit court's factual findings, we defer to its credibility determinations. *State v. Young*, 2009 WI App 22, ¶17, 316 Wis. 2d 114, 762 N.W.2d 736 (circuit courts make credibility determinations).

### A. D.J.W. Violation

¶13 *D.J.W.*'s directive mandates that circuit courts make "specific factual findings with reference to" the statutory standard it relies upon in ordering recommitment. *D.J.W.*, 391 Wis. 2d 231, ¶3. Although the circuit court here did not specifically identify which of the five standards it was relying on by number in the course of announcing its factual findings, this court, having reviewed the hearing transcripts, is nevertheless satisfied that the circuit court's actual words, combined with the County's closing arguments identifying its reliance on WIS. STAT. § 51.20(1)(a)2.b and § 51.20(1)(a)2.e as the basis for establishing dangerousness, complies with *D.J.W.*, albeit minimally.[5]

---

[5] *Langlade County v. D.J.W.*, 2020 WI 41, ¶3, 391 Wis. 2d 231, 942 N.W.2d 277, requires circuit courts to reference which of the five dangerousness standards they rely upon in making their factual findings, and a circuit court's failure to do so requires outright reversal if the underlying commitment order has expired. *M.W.*, 402 Wis. 2d 1, ¶4. The law, however, generally does not require the use of "magic words," and as explained, this court, having reviewed the Record, is satisfied that the circuit court's words, which incorporate some of the specific statutory language relied upon, complied with the *D.J.W.* mandate. *See State v. Brown*, 2020 WI 63, ¶27, 392 Wis. 2d 454, 945 N.W.2d 584 ("The law generally rejects imposing 'magic words' requirements." (citation omitted)).

That said, the circuit court's references to the relevant statutory language here were only minimally adequate, thus making this a very close case. Going forward, this circuit court—as well as circuit courts throughout Wisconsin—should be mindful of the *D.J.W.* requirement and, as a best practice, should specifically and directly reference the dangerousness standard(s) relied upon in rendering their decisions.

¶14    First, the County, based on the evidence and testimony presented during the hearing, argued that it had established dangerousness under WIS. STAT. § 51.20(1)(a)2.b and e, or at the very least, "certainly [under] the (e) standard[.]" Second, the transcript reflects that in announcing its factual findings and addressing dangerousness, the circuit court made the following findings: (1) D.E.S. acted out violently despite being in a locked setting and medicated; (2) when D.E.S. is challenged, frustrated, or upset, he turns to violence and physically attacks others; (3) even after being placed into the seclusion room, D.E.S. evidenced dangerous behavior when he tried to spit on the second nurse; and (4) spitting is a dangerous act as it can transmit disease.

¶15    As specifically relevant here, the circuit court described D.E.S.'s conduct toward others as "violent" and, after announcing its findings, stated:

> So I'm going to find that the grounds do exist for the extension of commitment, that [D.E.S.] is mentally ill, *dangerous pursuant to the factors* listed in [WIS. STAT.] Chapter 51. *Specifically*, that he would decompress and *deteriorate* without this commitment [and] that he has shown that he *is dangerous to other people as well*[.]

(Emphases added.)    The court's findings, the specific references to D.E.S.'s actions toward others being "violent" and "dangerous," and the reference to D.E.S. "deteriorat[ing]" demonstrate the circuit court's reliance on WIS. STAT. § 51.20(1)(a)2.b and § 51.20(1)(a)2.e.  This is so because:  (1) § 51.20(1)(a)2.b, the first standard the County relied upon, is satisfied by, inter alia, "a substantial probability of physical harm to *other individuals* as manifested by evidence of … *violent behavior*" (emphases added); and (2) § 51.20(1)(a)2.e references an individual's "deterioration" in the absence of treatment.[6]  Accordingly, despite not

---

[6]  WISCONSIN STAT. § 51.20(1)(a)2.e, as relevant, states:

(continued)

9

identifying the specific standards it was relying on with reference to the statutory numbering, the circuit court's words reflected the corresponding statutory language in § 51.20(1)(a)2.b and § 51.20(1)(a)2.e, which was sufficient to comply with *D.J.W.*

B. *Sufficiency of the Evidence*

¶16    D.E.S. next asserts the evidence was insufficient to establish he was dangerous. This court concludes that the evidence presented via Dr. Anderson's testimony and the two nurses' testimony, which the circuit court explicitly determined to be credible, was more than sufficient to find D.E.S. dangerous. This court sees no reason to disturb that credibility finding. Moreover, D.E.S. did not

> For an individual, … after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her and because of mental illness, evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that *the individual needs care or treatment to prevent* further disability or *deterioration* and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions.

(Emphases added.) Although the circuit court did not specifically reference D.E.S.'s understanding—or lack thereof—of the advantages and disadvantages of treatment after discussion, Dr. Anderson specifically testified as to such a conversation with D.E.S. and her opinion that D.E.S. was not capable of understanding them, and the circuit court did specifically state that Dr. Anderson "was qualified and had the experience and firsthand knowledge to give the opinion that she has" and therefore found "her testimony to be believable and credible[.]"

10

present any witnesses, and there is therefore no evidence to contradict Dr. Anderson's or the two nurses' testimony.

¶17 Accepting Dr. Anderson's and the nurses' testimony as credible, there was more than enough information submitted to the circuit court to establish by clear and convincing evidence that D.E.S. was dangerous under WIS. STAT. § 51.20(1)(a)2.b. Dr. Anderson testified about D.E.S.'s "breakthrough" violent acts—lashing out physically by charging at a nurse, throwing punches, and spitting at a nurse—despite being medicated, and gave the January 2021 example of D.E.S. acting out violently when he misperceives the actions of others nearby. In other words, D.E.S.'s inability to understand reality causes him to lash out violently even while receiving treatment. The two nurses also testified about the incident Dr. Anderson identified and stated that D.E.S.'s violent actions caused them to be concerned for the safety of themselves or others. Based on this extensive credible testimony, the circuit court's finding that D.E.S. met the dangerousness standard under § 51.20(1)(a)2.b is sufficiently supported by the Record as D.E.S.'s actions created a substantial probability that he would cause physical harm to others as evidenced by recent violent acts or attempts to do serious physical harm that placed the nurses in reasonable fear of serious physical harm.

¶18 Likewise, Dr. Anderson testified that she explained the advantages, disadvantages, and alternatives to treatment with D.E.S. and that, in her opinion, he was incapable of understanding the same. The circuit court explicitly found Dr. Anderson to be qualified and her testimony to be credible, and there was therefore sufficient evidence of dangerousness pursuant to WIS. STAT. § 51.20(1)(a)2.e.

11

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.